THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PARNELL MOONEY, Plaintiff in Error.

*Opinion filed June 23, 1928.*

1. CRIMINAL LAW—*what is sufficient to constitute embezzlement.* It is not a primary and fundamental requirement to a conviction for embezzlement that the evidence show that the total amount of money received by the defendant and the amount turned over by him to his employer do not balance, but any evidence that the defendant received money of his employer and failed to pay it over may be sufficient to warrant conviction though the total amount of the defalcation is not shown.

2. SAME—*when accountants' report is not admissible in prosecution for embezzlement.* In a prosecution for embezzlement of funds of the defendant's employer, a report made by accountants to the employer is not admissible where it states the conclusions of the accountants from an investigation based not on the books, records and documents alone, but on statements in regard to them made by parties interested in the transactions, as such statements are hearsay.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM V. BROTHERS, Judge, presiding.

JOHN J. MAHONEY, and WILLIAM C. MOONEY, (GEORGE J. MASSEY, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, ROY D. JOHNSON, and JAMES B. SEARCY, (HENRY T. CHACE, JR., EDWARD E. WILSON, and JOHN L. HOLMAN, of counsel,) for the People.

Per CURIAM: An indictment in three counts was returned at the October term, 1926, of the criminal court of Cook county against Parnell Mooney. The first and third counts were dismissed. The second charged that the defendant on January 8, 1926, being the office manager and agent in the employ of Faber, Coe & Gregg, Inc., a corpo-

ration, fraudulently and feloniously did embezzle and fraud-
ulently convert to his own use a large amount of personal
goods, funds, money and property, to-wit, treasury notes
of the value of $14,000, greenbacks of the value of $14,000,
Federal reserve notes of the value of $14,000, current coin,
and ten checks and orders for the payment of money, being
instruments in writing of the value of $1000, the property
of Faber, Coe & Gregg, Inc., which came to the possession
of the defendant by virtue of his employment. A trial re-
sulted in a verdict finding the defendant guilty and finding
the value of the property embezzled to be $19,677.23. The
defendant was sentenced on the verdict and has sued out a
writ of error.

The errors assigned question the sufficiency of the evi-
dence to sustain the verdict and allege error in the admis-
sion of improper evidence.

The evidence shows that Faber, Coe & Gregg, Inc., is a
corporation, whose principal place of business is in New
York. It operated a branch in Chicago at No. 9 East
Harrison street. It was engaged in the business of dealing
in cigars, cigarettes and tobacco as a jobber. Its Chicago
branch operated as a jobber at No. 9 East Harrison street
and conducted a retail stand in the Straus building. This
retail business will be referred to in this opinion as the
Straus stand, and Faber, Coe & Gregg, Inc. as the company.
Matthew S. Holmes was general manager of the Chicago
branch. Mooney was employed on February 25, 1924, as
office manager and so continued until January 2, 1926,
when he was discharged by Holmes for alleged neglect of
duty, the discharge to be effective on January 9. No
shortage in his accounts had then been discovered or sus-
pected. The Chicago branch maintained two bank ac-
counts, in one of which all the receipts of the Chicago
branch were deposited. It was subject to check only by
the New York office. The other account consisted origi-
nally of a fund of $3500 advanced by the New York office

for the use of the Chicago branch for the purpose of pay-
ing its operating expenses and was maintained by funds
remitted by the New York office for the purpose.  It was
subject to check by the Chicago branch for rent, salaries
and other expenses of conducting the business.  All checks
on this account were countersigned by the general manager
of the Chicago branch, and no money could be withdrawn
from that account without his signature.  Two hundred
seventy-five dollars of the original $3500 was withdrawn
and kept in the office as a petty cash fund for defraying in-
cidental expenses of the business.  The receipts of the Chi-
cago branch consisted of the receipts of the Straus stand,
cash sales made at the Harrison street store and payments
made at the Harrison street store on customers' accounts.
The Chicago branch employed five salesmen to solicit trade,
who made some collections on customers' accounts.  Other
payments on customers' accounts came by mail, which was
usually received and opened by Mooney though sometimes
received and opened by Holmes.  If Holmes received and
opened the mail, he testified that he gave the remittances,
each with the envelope in which it came, to Mooney;  that
Mooney made notations on the envelopes containing remit-
tances on customers' accounts indicating the book entries
to be made, the envelopes were given to the book-keeper,
and the indicated entries were made on the cash book and
posted to the customers' accounts.  The original directions
given by Mooney were filed away.  When a cash sale was
made it was shown by triplicate copies of the sales invoice,
one of which was given to the customer as a receipt, one
was given to Mooney or placed on his desk with the pro-
ceeds of the sale, either cash or check, which served as a
memorandum for an entry in the cash book and was then
filed away, and the third was sent to the New York office.
Mooney was office manager and credit manager, and his
duties involved the direction and superintendence of ac-
counts, the receipt of remittances by mail and directing the

entries to be made concerning them, and he collected the receipts of the Straus stand daily,—usually about three o'clock, as he returned from his lunch. He took the cash and checks from the cash register and the record made and adjusted the register for future use. The receipts of the Straus stand averaged about $116 a day. They were mostly in cash, the individual sales being from five cents to a dollar. There was a very small amount of credit business, but no collections on account were made. Where business was done on credit, forms were filled out and turned over, with the currency, when paid, to Mooney, who took charge of the account. A few small checks of from $5 to $20 were cashed for the convenience of other tenants of the building, and the manager cashed his own salary check weekly, and that of another employee, from the cash register. The record made by the register of the contents of the cash drawer became a part of the records of the Chicago branch and was the basis for an item entered on the cash book. The petty cash was kept in a tin box in an unlocked drawer of Mooney's desk, which was always open, and in that drawer he also kept the receipts of the office and the notations identifying receipts until deposit slips were prepared and the funds were sent to the bank for deposit. Checks were indorsed with a rubber stamp "for deposit only." When a deposit was to be made, about noon of each day, two deposit tickets were made: one of the receipts of the Straus stand, which was usually prepared by Mooney; the other, of the remaining receipts of the Chicago branch, which was prepared by Miss Eisenberg, who received a memorandum from Mooney showing the checks. Miss Eisenberg added them on the adding machine, deducted the sum from the total of cash and checks entered on the cash book, and asked Mooney if the difference was the correct amount of cash. If it was not correct the mistake was corrected. When the correct amount was ascertained she filled out the deposit ticket, it was approved and

stamped by Mooney, and the cash and checks were given to her, with the deposit slip, for deposit. The correct amounts were deposited in every case so far as the receipts were shown on the cash book. If all the receipts of the Chicago branch were shown on the cash book then all the receipts were deposited in the account against which no one in the Chicago branch could draw. While the office was in Mooney's charge he was not a book-keeper and the entries made in the book were made by other persons, some of whom were not witnesses.

It is argued on behalf of the plaintiff in error that there was a failure of proof of any embezzlement, of any loss by the company, of any shortage of funds or any conversion of funds by the plaintiff in error. It is said in the brief that the primary, fundamental and essential element in the case was to show the total amount of money and checks received by Mooney for the firm and of the total amount turned over to the firm by him, and if the two amounts balanced there was no embezzlement, but if the amount received exceeded the amount turned over there might be an embezzlement, but without proof of loss there was none. It is not true that the primary, fundamental requirement to a conviction in this case was to show the total amount of money received by Mooney and the total amount paid over. If that were done it would show whether there was a defalcation by Mooney, and if there was, its amount. That was not, however, the only way to prove embezzlement. If it were proved in any other way that Mooney, as agent of the company, had received any of its money which he had failed to pay over, these facts would be sufficient to require his conviction though the total amount of his defalcation was not shown. It was, however, necessary for such conviction that the evidence should show not only, beyond a reasonable doubt, that funds of the company had been embezzled, but also to prove, beyond a reasonable doubt, that Mooney was the person who embezzled such funds. The

evidence discloses that at least half a dozen persons had access to the drawer in which the checks, the receipts from the Straus stand, the cash received from sales made at the Harrison street store and the cash payments made on customers' accounts at the store were contained, only two of whom were called as witnesses in the case. The evidence shows that from one to three o'clock P. M. each day Mooney was absent from the store, at which time all of the other employees had access to the cash drawer. As the judgment must be reversed we deem it improper to further discuss the evidence in the case.

After Mooney's discharge Holmes procured an accountant to make an audit of the books, and he made a trial balance as of January 31, 1926. Objection was made to the introduction in evidence of certain exhibits showing a trial balance as of January 31, 1926; also showing the report made to the company by the accountants of the result of their investigation; also containing a list of identified checks of customers deposited and substituted for receipts from the Straus building cigar stand. These exhibits stated the conclusions of the accountants from their investigation of the books and records of the company, reports to the New York office, bank deposit books, deposit tickets, checks and other documents, many of which were referred to by the witnesses in their testimony. The investigation was based not on the books, records and documents alone, but on statements in regard to them made by the parties interested in the transactions, and these were hearsay so far as Mooney was concerned. They were incompetent to be received against him, and so were conclusions of the witnesses based on them.

For the error in the admission of evidence the judgment of the criminal court of Cook county is reversed and the cause remanded to that court.

*Reversed and remanded.*