**ROGERS RECREATION CO. OF CONNECTICUT v. COMMISSIONER OF INTERNAL REVENUE.**

No. 203.

Circuit Court of Appeals, Second Circuit.

May 1, 1939.

Dennis P. O'Connor, of Hartford, Conn., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

SWAN, Circuit Judge.

This proceeding involves a deficiency income tax and penalty for the year 1931 assessed more than two years after the return was filed. The principal question is whether there is support in the record for the Board's finding that the taxpayer's return was false and fraudulent with intent to evade the tax. If so, the deficiency assessment was timely, section 276(c), Revenue Act of 1928, 45 Stat. 857, 26 U.S.C.A. § 276(c), and the 50 per cent. addition to the deficiency was a valid penalty, section 293(b), 45 Stat. 858, 26 U.S.C.A. § 293(b); otherwise neither assessment nor penalty can be sustained, section 275(a), 45 Stat. 856, 26 U.S.C.A. § 275 note.

On March 14, 1932, the taxpayer filed its return for the calendar year 1931 in which it reported a net loss by reason of a deduction of $44,000 claimed as a loss sustained on a sale of stock of Rogers Recreation Company of St. Louis acquired in 1924 at a cost of $45,000 and sold in 1931 to George C. Rogers for $1,000. In December, 1935, the commissioner disallowed the claimed deduction, determined a deficiency assessment of $2,380.93 and added a 50% penalty of $1,190.47. The taxpayer appealed to the Board, assigning as error disallowance of the deduction and assessment of the deficiency and penalty after expiration of the two year statute of limitations. The commissioner's amended answer affirmatively alleged that the taxpayer's sale of stock of the St. Louis company was not a bona fide transaction and that the return was false and fraudulent with intent to evade tax. After hearing, the Board sustained the commissioner.

The taxpayer is a Connecticut corporation engaged in the business of operating bowling alleys and billiard rooms. Since its organization in 1922 George C. Rogers and his wife have owned a majority of its stock. They were two of its three directors and he held the offices of president and treasurer. In 1924 the Rogers Recreation Company of St. Louis, a Missouri corporation, was organized by Rogers and others to conduct a similar business in St. Louis. It had a paid-in capital of $106,000, consisting of $26,000 of 8 per cent. preferred stock and $80,000 of common stock. Of such common stock the Connecticut company, the taxpayer, subscribed for 450 shares, paying therefor $45,000; and George C. Rogers personally acquired additional shares, and was an officer of the St. Louis company until February, 1931. The St. Louis company operated its bowling alleys and billiard tables in a leased building, for which the annual rental was $55,000, personally guaranteed by George C. Rogers. For reasons which need not be detailed the business history of the St. Louis company proved disappointing; no dividends were ever paid upon the common stock and partial dividends of 4 per cent. annually were paid upon the preferred stock for only the first three years of its existence. On October 31, 1929, the stockholders of the taxpayer voted to sell to George C. Rogers its 450 shares of stock in the St. Louis company (recited in the resolution to have "an adjusted book value" of $31,500) in exchange for 500 shares (par value $25,000 but recited to have a "book value" of $63 per share) of the taxpayer's own stock, which were to be retired. The exchange was made and the 500 shares of its own stock were canceled. In its 1929 income tax return the taxpayer claimed as a deduction "Loss St. Louis Investment, Cost in 1924, $45,000—Received in 1929, $25,000—Loss $20,000." In a deficiency notice for 1929, mailed on November 17, 1931, the commissioner disallowed the claimed deduction on the ground that the taxpayer sustained no deductible loss on the purchase and retirement of its own capital stock. Whether such disallowance was right or wrong is not now material. The taxpayer took no appeal and paid the asserted deficiency for 1929. On November 24, 1931, the stockholders of the taxpayer voted "that $25,000 par value of this companies [sic] stock retired be reissued to George C. Rogers in exchange for $45,000

par value stock of Rogers Recreation Company of Missouri." The exchange was carried out the following day. During the period of Rogers' ownership of the 450 shares from November 1, 1929 to November 25, 1931, the St. Louis company's business had declined, and at some time during 1931 it became unable to pay the rent due on its leased premises. In November or December of that year the lessors called on Rogers to make good his guaranty of rents. Prior to December 30, an agreement was reached by which the lessors were to release Rogers from his guaranty and he was to transfer to them the 450 shares of the stock of the St. Louis company held by the taxpayer, additional shares owned by him personally, the sum of $3,000 in cash, and a claim for back salary as an officer of the St. Louis company. On December 30, 1931, the stockholders of the taxpayer voted to transfer the 450 shares of St. Louis company stock to Rogers for the sum of $1,000. Pursuant thereto the stock was transferred and $1,000 charged to Rogers' personal account on the taxpayer's books. Rogers knew that at this time the stock was "worth hardly anything." In its income tax return for 1931, the taxpayer reported under the heading "Sale of Stock Investments", as follows: "Rogers Recreation Co. of St. Louis, Cost 1924, $45,000—Received 1931 $1,000—Loss $44,000." A certified public accountant who had compiled the taxpayer's returns each year since its organization recommended the November transfer by Rogers to the taxpayer in exchange for $25,000 par value of its own stock, and the December transfer back to Rogers for $1,000, because the claimed loss of $20,000 on the St. Louis company stock had been disallowed in the commissioner's deficiency notice of November 17, 1931. The 500 shares of the taxpayer's stock issued to Rogers on November 25, 1931, were canceled on May 28, 1932.

The facts above recited were found by the Board. From them the Board concluded that the November and December transactions regarding the St. Louis company stock "did not constitute bona fide transactions," and that in reporting a loss of $44,000 on such stock the taxpayer filed a false and fraudulent return with intent to evade a tax.

The commissioner and the Board were clearly right in disallowing the claimed deduction of $44,000 in the 1931 return. The taxpayer first acquired the St. Louis company's stock in 1924, disposed of it to Rogers in 1929 and reacquired it from him in November, 1931. Hence, on the taxpayer's assumption that it was reacquired in good faith, the stock had a new cost basis and, when it was sold five weeks later, the loss was not $44,000 as claimed, but the difference between what it cost the taxpayer in November, 1931, and the December sale price of $1,000. Such difference does not appear; no evidence was offered to prove the value on November 25, 1931, of the 500 shares of the taxpayer's stock "reissued" in exchange for Rogers' transfer of the St. Louis company's stock.

The 1931 return was false in representing the cost basis of the stock as $45,000, the date of acquisition as 1924, and the loss sustained in 1931 as $44,000. But it does not necessarily follow that the return was fraudulent. The Board's findings of fact make no mention of several items of uncontradicted testimony which are highly significant on the issue of fraud. Mr. Hall, the certified public accountant who prepared the taxpayer's returns, testified that when the $20,000 loss claimed in the 1929 return in respect to the St. Louis company's stock was disallowed, "I figured a greater loss could be taken by disposing of the stock in 1931, than in 1929." As a result of the 1929 deficiency letter of November 17, 1931, he talked the situation over with Mr. Rogers and "recommended the transfer in 1931 of the St. Louis stock back for the Connecticut Company stock." He also testified: "I had already spoken to the field agent who had made this field audit, Mr. Davis, and told him that we would not protest this assessment for 1929 because we intended to take the loss in 1931, and that is why these transactions were made later."

On cross-examination he was not certain that Mr. Davis was the revenue agent to whom he had spoken, but he insisted that whoever the field auditor was he had told him at the time that "we are not going to fight this $20,000 loss now, because we can get a better advantage in 1931 from present conditions." While such a statement to a revenue agent is quite irrelevant on the issue of the taxpayer's right to reverse the 1929 transaction and take the original cost basis of the stock to determine loss on disposal of it in 1931, it is

very material on the issue of the taxpayer's good faith in claiming the full loss in 1931. That Mr. Hall honestly believed that the 1929 transfer could be legally reversed for income tax purposes is shown further by a reference in the 1931 return to the 1929 deficiency letter of November 17, 1931. The printed blank, form 1120, was filled out to show only a net loss, with a reference to appended schedules. The latter contained a heading "Sale of stock Investments" under which the claimed loss of $44,000 was shown as quoted above in the statement of facts. Below this, on the same sheet, was a heading "Surplus Reconciliation," the first two items of which read as follows:

Surplus January 1, 1931 ........ $37,806.79
Add Loss on Transfer of St.
  Louis stock disallowed as per
  Treasury Dept. letter of Nov.
  17, 1931 .................... 20,000.00

Thus the commissioner was put on notice, if he looked up the letter of November 17, 1931, that the St. Louis company's stock had been originally acquired in 1924 and disposed of to Rogers in 1929. Cf. Jemison v. Commissioner, 5 Cir., 45 F.2d 4, 6. That Rogers as treasurer of the taxpayer acted on Hall's advice that the 1929 transfer be reversed is shown by his testimony that, although he knew the St. Louis company's stock was not worth $45,000 in November, 1931, he set it up at that figure on the taxpayer's books and balanced it with $25,000 of reissued stock and $20,000 surplus, "because it was just a reverse of the 1929 transaction." Finally, it may be noted that any implication that the issue of 500 shares of stock to Rogers in November, 1931, was fictitious, which might be drawn from the Board's finding that such shares were canceled on May 28, 1932, is unwarranted because Rogers stated that this was in connection with the reduction of the taxpayer's capital stock from $200,000 to $80,000 at the time a New Jersey corporation was organized.

Undoubtedly the purpose of reversing the 1929 transaction was to enable the taxpayer to claim a loss in 1931 on the basis of the 1924 cost of the St. Louis company's stock. This was not legally permissible, but unless it was so obviously illegal that neither Rogers, an officer of the taxpayer, nor Hall, its accountant, could honestly believe it permissible, we can see no ground for finding the return fraudulent. There is nothing fraudulent in attempting to reduce taxes by claiming a deduction honestly but erroneously believed to be legally permissible. Two members of the Board dissented from its decision on the ground that the evidence of fraudulent intent was not sufficient. We agree with them. The taxpayer's officer, Rogers, acted on the advice of an accountant who had always prepared the company's income tax returns. The accountant testified in effect that he gave the advice because he thought the taxpayer was entitled to the deduction. There was no attempt at concealment, for he told the field auditor his purpose, and he made reference in the return to the 1929 deficiency letter which should have informed the commissioner of the facts destructive of the claim. In our opinion there was no substantial evidence to support the finding that the return was fraudulently filed. Consequently the deficiency was barred by section 275(a) of the Revenue Act of 1928.

Order reversed.