(No. 25589.—

CLARENCE HOFFMAN *et al.* Appellees, *vs.* THE DEPARTMENT OF FINANCE, Appellant.

*Opinion filed October 11, 1940—Rehearing denied Dec. 4, 1940.*

JOHN E. CASSIDY, Attorney General, (MONTGOMERY S. WINNING, MORTIMER PORGES, JAMES J. TEBOREK, and PHILIP J. SIMON, of counsel,) for appellant.

MAURICE A. FRANK, and MAX M. and SAMUEL GROSSMAN, for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

This is an action under the Retailers' Occupation Tax act. The Department of Finance of the State of Illinois, after examination, and an audit of the appellees' books, made a corrected return for the period from July, 1936, to December, 1937, both inclusive, and sent the appellees notice of a proposed assessment in the sum of $3410.34, plus penalties in the sum of $381.46, making a total assessment of $3791.80. The appellees protested the proposed assessment, and a hearing was held. Based on this hearing, the department issued a final assessment to appellees in the sum of $3319.10, plus penalties in the sum of $373.54, making a total of $3692.64.

Appellees sued out a writ of *certiorari* from the circuit court of Cook county. The case was argued on the transcript of proceedings had before the department, and the court quashed the return, in part, quashed the writ, in part, and rendered judgment in favor of the department in the sum of $1826.86. The department appealed to this court because the revenue is involved and the State is an interested party.

After their statement of facts in their brief appellees assign cross-error in that the court failed to quash the return of the Department of Finance.

Appellees, Morton Hoffman, Clarence Hoffman and Ida Hoffman, his wife, repair furs and conduct a partnership which does a retail and wholesale business at 190 North State street, Chicago. The testimony shows that from ten to twelve per cent of their 1000 to 1400 accounts are with persons who reside outside Illinois. The amended return of the department resulted from the audit of appellees' books, records and papers. The audit itself, and the testimony of the department's auditor, Theodore N. Perry, show appellees made incorrect returns as to receipts from services, goods sold for resale and in interstate commerce. In making the audit, Perry testified he determined from the cash receipts and accounts receivable ledgers that the appellees had made an erroneous return as to receipts from services rendered. As to sales for resale, items were allowed wherever he found invoices, letters or express receipts which made it reasonably certain the goods in question were actually shipped to a non-resident customer. Fifteen persons made affidavits that their purchases which appeared on the books of appellees as purchases by individuals rather than business houses, were, in fact, for resale, and the items covered were allowed, and the receipts from these sales were deducted from the total receipts frcm merchandise sold for use or consumption and not for resale. Perry testified that an outside investigation was made in some instances to determine what was the purpose of the sales. It was discovered that appellees had shipped by express to non-residents eighty-six dummy packages labelled "furs" from January 15 to January 18, 1938. This was about the time the investigation was being made by the department. Clarence Hoffman was arrested and taken to the State's attorney's office. There he made two statements in which he admitted that these boxes contained only old newspapers and waste

materials such as old linings of garments, and were shipped at his direction to non-residents so that appellees might get express receipts and use them in convincing the department that merchandise actually sold in Chicago had been sold in interstate commerce. When he testified at the hearing, he said that a man named Murphy, who was with the department, called two or three times at appellees' place of business, in December, 1937, or January, 1938. Clarence Hoffman asked what proof the department required that items shown on appellees' books as interstate shipments, were such in fact, and Murphy replied: "The only evidence that we will accept that they are *bona fide* out-of-State people is to have you give me an express receipt of an item delivered to that address." Clarence Hoffman then proceeded by way of explanation to say: "So we told him we would make these shipments and produce the express receipts for him, and so we made the shipments."

The witness Bartels, a special investigator from the State's attorney's office, obtained the boxes, and the witness, Bugan, an assistant State's attorney, testified as to Clarence Hoffman's statements in which he admitted buying $1.25 worth of old newspapers from a boy in the building where appellees conduct their business, to use in fixing up the dummy packages, and further admitted the sending of those boxes to the persons named in the express receipts which were there called to his attention.

Clarence Hoffman testified the books of appellees were correct, and Marian Chaitkin, who had been employed by appellees for about two months as bookkeeper, testified she looked at the invoices and marked the item as inter-State if the address of the purchaser was that of a non-resident.

Appellees offered in evidence ninety-four statements and letters purporting to have been signed by as many individuals which, in effect, stated each of these persons lived outside the State of Illinois, that they purchased certain merchandise on a day named, from appellees, and that these

goods were delivered to them at their places of residence. Ruth Richmond, a typist employed by appellees, stated she addressed and sent out the letters and the form replies to the ninety-four persons named.

There were no "certificates of resale" in appellees' papers, for the period covered by the investigation and although section 7 of the Retailers' Occupation Tax act (Ill. Rev. Stat. 1939, chap. 120, par. 446) requires every person engaged in the business of selling tangible personal property at retail in this State to keep records and books of all sales together with "invoices, bills of lading, sales records, copies of bills of sale, and other pertinent papers and documents," there were no express receipts or bills of lading among the papers of the appellees, covering the disputed inter-State items. The appellees did not show that they sent the merchandise to non-residents in interstate commerce, by the testimony of their witnesses or by any proper exhibits, if consideration is given to the whole record.

Appellees say that ninety-four form letters mentioned above were admissible because there is a presumption that the answer to a letter addressed to a named person, is the answer, in fact, of the person whose name is signed thereto. They cite 1 Elliott on Evidence, sec. 107, 22 Corpus Juris, p. 94, and 5 Wigmore on Evidence (2d ed.) p. 581. These citations are not helpful. They apply where the letters are written by one of the parties to another or to letters from a principal to his agent and *vice versa*. The letters in this case were hearsay and were not admissible. *Novicki* v. *Department of Finance*, 373 Ill. 342.

Appellees are not correct in their contention that section 4 of the act before us is unconstitutional. This court has held that the constitution does not guarantee the right of trial by jury in tax proceedings. (*Mix* v. *People*, 86 Ill. 312.) The constitution guarantees the right of a jury trial only as that right existed at common law. *Hoehamer* v. *Village of Elmwood Park*, 361 Ill. 422.

In *Department of Finance* v. *Cohen*, 369 Ill. 510, 516, this court said: "The statute sets forth with great detail the matters which must go into the monthly return, and lays down a guide which, when followed, leaves nothing open for arbitrary discretion. The legislature cannot deal with the details of every particular case, and reasonable discretion as to the manner of executing a law must necessarily be given to administrative officers. (*Winter* v. *Barrett*, 352 Ill. 441.) The sections of the statute complained of do not violate the constitution by investing administrative officers with judicial powers, and the objection that appellant is deprived of property without due process of law has already been adversely decided in *Reif* v. *Barrett*, 355 Ill. 104. Moreover, section 12 of the act provides a method of reviewing the action of the department by applying for a writ of *certiorari* from the circuit or superior courts." See, also, *Department of Finance* v. *Gold*, 369 Ill. 497.

The Department of Finance was not content to rely solely on the *prima facie* case made by the amended tax return. It offered convincing testimony that the books, records and papers of appellees were incorrect, and the admissions of Clarence Hoffman clearly show that the appellees wilfully attempted to evade payment of what they owed and to defraud the State of Illinois.

Appellant and appellees agree that under our holding in *People* v. *Fisher*, 373 Ill. 228, the trial court was without authority in law to enter an order quashing the writ, in part, and quashing the return, in part, and to enter a judgment as it did for $1826.86.

For the reasons stated this cause is remanded to the circuit court of Cook county, with directions to quash the writ of *certiorari*.

*Reversed and remanded, with directions.*