THE PEOPLE OF THE STATE ÓF ILLINOIS, Plaintiff-Appellee, *v.* L & M LIQUORS, INC., *et al.*, Defendants-Appellants.

First District (2nd Division) No. 60635

Opinion filed February 26, 1976.—Rehearing denied April 14, 1976.

Morton Siegel, of Chicago (Alan Goldberg, of counsel), for appellants.

William J. Scott, Attorney General, of Chicago (James B. Zagel, Jayne A. Carr, and Steven J. Rosenberg, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Our sales tax statute contains provisions under which a misdemeanor penalty can be imposed on a retailer of personal property who files, or an officer or agent of a corporate retailer who signs, a fraudulent sales tax return. Pursuant to these provisions, L & M Liquors, Inc., an Illinois retailer of liquor, was charged with having filed, and its president, Jack Shapiro, with having signed, four fraudulent sales tax returns. At their election, they were tried without a jury, found guilty, and for each offense were sentenced to pay a $250 fine and $10 costs, a total of $2080 for the two of them.

They appeal and present three issues. 1. Whether the failure to advise a corporation president of his rights under *Miranda v. Arizona* bars the State from using the corporation's records, voluntarily submitted in a civil audit, to prosecute the president on charges that he signed fraudulent sales tax returns for the company. 2. Whether the failure to verify deductions claimed in sales tax returns subjects the taxpayer to criminal fraud charges. 3. Whether the evidence proved beyond a reasonable doubt that the corporate defendant filed and the individual signed fraudulent sales tax returns.

I.

L & M Liquors, Inc. is an Illinois corporate retailer of liquor in the city of Chicago. Jack Shapiro is its president. In June 1970, Robert Hutton, an auditor for the Illinois Department of Revenue, began a civil sales tax audit of L & M for a period beginning July 1, 1968. Shapiro and other authorized company personnel cooperated with Hutton and furnished the books and records needed for the audit. From these, Hutton learned that in the first eight months of 1971 there were approximately 2400 transactions which the company claimed were nontaxable sales. On October 19, 1971, Hutton went to the office of L & M's lawyer, reviewed the records he had been furnished and said he needed additional documentation to substantiate the claim that certain transactions were nontaxable. The lawyer promised to obtain it. About six months later, however, the lawyer and Shapiro told Hutton that they could not produce the requested documentation. Instead, they gave Hutton a list of 17 L & M customers who, they said, would substantiate the fact that their transactions with the company were nontaxable. Hutton took the list and checked each business house it contained; but he did not

investigate any of the other transactions among the 2400 L & M claimed were nontaxable. He did not check any nontaxable claims for September, October, November or December 1971, the months covered by the returns which the State charged were fraudulent.

About two months after he was given the list, Hutton met with Shapiro and told him that the 17 customers did not substantiate L & M's claim that its transactions with them were non-taxable sales. Hutton demanded more documentary proof; but Shapiro told him the company could not furnish it. Hutton, however, insisted he had to have additional information concerning the company's retail sales before he could conclude his audit. He was then supplied with photostatic copies of L & M's books for 1971. Eight months later, on April 30, 1973, the State filed the criminal complaints in these cases, four against L & M charging it had filed, four against Shapiro charging he knowingly had signed, sales tax returns that were false and fraudulent. Each complaint alleged that for the month involved September, October, November and December 1971, the gross receipts of L & M were understated.

The charges were later heard by the court sitting without a jury; and the State's evidence consisted of Hutton's testimony, photostatic copies of L & M's records and sales tax returns for each month of 1971. Hutton described the civil audit he conducted of L & M's books and told the court how the 1971 sales tax returns for the months of January through August reflected the fact that 60% of the monthly sales were reported as taxable while 40% were deducted as nontaxable transactions. Hutton testified that for the last four months of the same year, the months covered by the complaints, the ratio of taxable to nontaxable sales changed from 60%-40% to 85%-15%. Concerning the 17 customers Shapiro had told him would substantiate L & M's claims of nontaxable sales, Hutton told the court that he contacted them. Over objections, and as to each name on the list, he was asked if he reached any conclusion concerning purchases from L & M of nonalcoholic beverages for resale. Defendants' objections were overruled and Hutton was permitted to say, as his conclusions, that none of the 17 customers had purchased nonalcoholic beverages for resale from L & M. At the end of his testimony, defendants renewed their objection that what Hutton had told the court was hearsay; and they moved that his testimony be stricken from the record. Their motion was denied.

Shapiro was the only defense witness. He told the trial court that a large percentage of L & M's business was with out-of-State purchasers because it was located near an expressway. He said that the corporation sold to tavern owners in its area, made sales for resale, and had a large business with religious institutions and organizations. Shapiro explained

that after he acquired control of L & M, he was able to determine the percentage pattern in sales categories. From his experience, he determined that 40% of the gross sales were nontaxable transactions. The original information concerning these sales (the sales receipts, etc.) were kept by the company 60 days and then destroyed because they were voluminous. As a consequence, Shapiro said he was not able to furnish Hutton the kind of information he had requested. Shapiro explained that the change in the percentage of nontaxable sales from 40% to 15% for the months of September, October, November and December 1971, was caused by an increase in over-the-counter transactions during the holidays that occurred in those months.

Shapiro's testimony concluded defendants' case. No rebuttal was made by the State. The court then heard argument of counsel, found both defendants guilty and imposed fines and costs. We will first resolve the principal issue in this appeal, whether the evidence proved defendants guilty beyond a reasonable doubt, and in so doing, determine whether the failure to verify claimed deductions subjects a taxpayer to criminal fraud charges under the sales tax statute of this State.

## II.

From its complaints, it appears to have been the State's theory in these cases that for the months of September, October, November and December, 1971, L & M filed and Jack Shapiro signed fraudulent sales tax returns in which the company's gross receipts were understated. It was alleged in each complaint that the understatements of gross income were violations of the sales tax penalty section which provides that "[a]ny person engaged in the business of selling tangible personal property at retail in this State who * * * files a fraudulent return, * * * or any officer or agent of a corporation engaged in the business of selling tangible personal property at retail in this State who signs a fraudulent return filed on behalf of such corporation * * * is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $25 nor more than $5,000, or be imprisoned * * * for not less than one month nor more than 6 months, or both." Ill. Rev. Stat. 1971, ch. 120, par. 452.

The evidence offered to prove these allegations was the testimony of the State's only witness, the Department of Revenue auditor Robert Hutton, aided by copies of L & M's records and its monthly, 1971 sales tax returns. Hutton testified, and the company's records showed, that in the first eight months of 1971, L & M had some 2400 transactions which it claimed were nontaxable. Of these, Hutton said he checked out 17 and concluded that none of them had made the claimed non-

taxable purchases. The listed 17 business houses, however, did not deal with L & M in September, October, November and December 1971, the months for which, according to the State, the fraudulent returns were filed. But, according to Hutton, what was more important was the fact that L & M could not verify that any of the 2400 transactions were in fact nontaxable sales. From Hutton's testimony, it appears that he did not inquire concerning the transactions in question, hence, he knew nothing about them. He emphasized, nonetheless, that L & M's records and its returns disclosed that for the first eight months of 1971, 60% of the company sales were taxable while 40% were not. However, in the last four months of the year, the ratio of taxable to nontaxable sales was 85% to 15%.

In this appeal, as it did in the trial court, the State argues that this evidence proved the returns for September, October, November and December 1971 were fraudulent. Defendants respond with the argument that under the laws of this State, the failure to verify claimed deductions or assertions of nontaxability does not impose criminal liability on a taxpayer under the sales tax act; and since the State did not produce any evidence concerning L & M's transactions for the months covered by the returns for September, October, November and December 1971, it failed to prove beyond a reasonable doubt that the company filed and Shapiro signed fraudulent sales tax returns.

It is worth noticing that the statute which the State invokes for these prosecutions does not define what constitutes the filing or the signing of a fraudulent sales tax return. (See Ill. Rev. Stat. 1971, ch. 120, par. 452.) Neither our research nor that of counsel for the parties has produced any case in which a reviewing court of this State has dealt with the issues before us. Evidently, no reviewing court in this State has ever had occasion to determine the elements of the crimes of which defendants have been convicted. Therefore, we must look to the decisions of other courts and to such analogies as may exist in this or in other jurisdictions. The concept of fraud in the civil law is a starting point.

■■ To render a representation "fraudulent" in the law of torts, what is stated must be false; and the party making the representation must know it is false. (*Merwin v. Arbuckle*, 81 Ill. 501.) Concerning the mental state required for fraudulent conduct, it has been said by competent authority that "[f]rom the early decisions to those of the present day, the courts of Illinois have uniformly held that fraudulent intent is a necessary element of actionable fraud." (19 Ill. L.&Pr. *Fraud* §4 (1956).) Fraud implies a wrongful intent, an act calculated to deceive. (*Dahlke v. Hawthorne, Lane & Co.*, 36 Ill. 2d 241, 222 N.E.2d 465; *Exline v. Weldon*, 57 Ill. 2d 105, 311 N.E.2d 102.) As a general principle of law,

courts have been consistent in holding that fraud is always a positive and willful device, resorted to with the intent to injure another in some manner. (See *Greeley National Bank v. Wolf* (8th Cir. 1925), 4 F.2d 67, 70; compare *Citizens Savings and Loan Association v. Fischer*, 67 Ill. App. 2d 315, 214 N.E.2d 612.) In the law governing the reporting of Federal taxes, it has been held that a fraudulent return is always an attempt to evade the tax; and that in the filing of a return, "* * * 'fraudulent' includes an intent and involves a subject matter of which someone is to be deprived." (*Rick v. United States* (D.C. Cir. 1947), 161 F.2d 897, 898; see *Sansone v. United States* (1965), 380 U.S. 343, 352, 13 L. Ed. 2d 882, 85 S. Ct. 1004.) Therefore, we conclude that under our sales tax act the crimes of filing or signing a fraudulent return require intent, even though this element is not mentioned in the statute. (Compare *People v. Player*, 377 Ill. 417, 36 N.E.2d 729.) And where intent is an element of a crime, it must be proved by the State beyond a reasonable doubt. (*People v. Broccolo*, 7 Ill. App. 3d 1009, 288 N.E. 2d 883 (abstract opinion); see *People v. Friedman*, 321 Ill. 572, 152 N.E. 523; compare *People v. Long*, 385 Ill. 495, 53 N.E.2d 446.) Of course, it may be shown by circumstantial evidence. (*People v. Beacham*, 358 Ill. 373, 193 N.E. 205; *People v. Walker*, 21 Ill. App. 3d 202, 315 N.E.2d 244; see *People v. Minish*, 19 Ill. App. 3d 603, 312 N.E.2d 49.) But where, as in these cases, a conviction is based on circumstantial evidence, the evidence relied on must produce a reasonable and moral certainty that the accused is guilty of the crime charged. *People v. Johnson*, 31 Ill. 2d 321, 201 N.E.2d 367; *People v. Lewis*, 97 Ill. App. 2d 255, 240 N.E.2d 459.

■■ In our judgment, it cannot be said that the evidence on which the State relied produces a reasonable and moral certainty that defendants are guilty of the crimes of which they were convicted. The evidence in this record consists of Robert Hutton's testimony, aided by the circumstances shown in L & M's record and its 1971 sales tax returns. His testimony that L & M did not engage in nontaxable sales in 1971 with the 17 listed business houses was inadmissible hearsay because he was, in substance, merely repeating what was told him by persons with whom he talked in the course of his investigation. (*Novicki v. Department of Finance*, 373 Ill. 342, 26 N.E.2d 130; compare *Hoffman v. Department of Finance*, 374 Ill. 494, 30 N.E.2d 34; see McCormick on Evidence §246 (2d ed. 1972).) On the precise issue whether the transactions in question were nontaxable, Hutton was allowed to answer questions by stating his conclusions. This was not permissible. (*Scharlau v. Lombard State Bank*, 278 Ill. App. 487; see *People v. O'Neal*, 118 Ill. App. 2d 116, 254 N.E.2d 559.) Defendants objected to his testimony and moved that

it be stricken. Their motion should have been granted; the refusal of the trial court to strike the conclusionary testimony of this witness was error. *People v. Mooney*, 330 Ill. 565, 162 N.E. 148; *People v. Sawhill*, 299 Ill. 393, 132 N.E. 477; 6 Callaghan's Illinois Evidence §17.14 (1964). ▪▪ Therefore, when Hutton's testimony is scrutinized, the only competent evidence touching on the State's allegations that L & M filed and Shapiro signed fraudulent sales tax returns are the circumstances reflected by the company's books and records, and those disclosed by the returns in question. We are satisfied that the variation in the ratio of taxable to nontaxable sales, standing alone, has no criminal significance. Among Federal income tax cases, there are many which hold that the understating of income by a taxpayer, though false, will not prove the offense of filing a fraudulent return. (See *Toledano v. C.I.R.* (5th Cir. 1966), 362 F.2d 243; *Breland v. United States* (5th Cir. 1963), 323 F.2d 492; *Jenkins v. United States* (5th Cir. 1963), 313 F.2d 624; *Rogers Recreation Co. v. Commissioner* (2nd Cir. 1939), 103 F.2d 780; *Delone v. Commissioner* (3d Cir. 1938), 100 F.2d 507; *Lee v. United States* (N.D. Miss. 1973), 365 F. Supp. 389; *United States v. Koppelman* (M.D. Pa. 1945), 61 F. Supp. 1007.) Accordingly, we think that the mere failure to verify claimed deductions or assertions of nontaxability under the sales tax act will not subject a taxpayer in this State to criminal fraud charges. In fact, the sales tax statutory scheme contemplates that the failure of a taxpayer to substantiate the deductions he claims in his return may result in a notice of tax liability, a civil rather than a criminal consequence. (See. Ill. Rev. Stat. 1971, ch. 120, par. 440 *et seq.*; art. 7, Department of Revenue Regulations.) For these reasons, the judgments are reversed.

Reversed.

STAMOS, P. J., and DOWNING, J., concur.