THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM L. DELAY, Defendant-Appellant.

Fourth District   No. 15198

Opinion filed April 19, 1979.

Anthony J. Murray, Jr., of Chicago, for appellant.

C. Joseph Cavanaugh, State's Attorney, of Springfield (Robert C. Perry and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

Is one permitted to sign someone else's name to a document and then deny scienter to do the thing done?

Of course not.

The conviction is affirmed.

Delay applied for a certificate of title for a 1977 Pontiac automobile at the Secretary of State's office in Springfield. An employee of the office, Gladys Hoagland, determined that the last title of record for the automobile was a salvage title issued to Motors Insurance Company. (A salvage certificate is issued only when a car is lost, destroyed, or stolen.) Hoagland then took the defendant to the supervisor of the title division, Shirley Caldwell, and introduced the defendant to Caldwell as "Mr. D."

Hoagland handed Caldwell four documents relating to the automobile: a duplicate application for title; a copy of the salvage certificate; defendant's title only application; and defendant's salvage affidavit. Caldwell discarded the application for duplicate title, because it was inapplicable since the car was in salvage. Caldwell then filled out an application for a certificate of salvage on the automobile and cancelled the microfilm "Duplicate Salvage Certificate." Caldwell then gave the application she had just filled out to the defendant and asked him to sign it. The defendant then signed the application "J. Dags" and returned it to her.

Caldwell assumed that the defendant was an agent of the title holder insurance company, although the defendant never specifically held himself out to be such. During cross-examination, Caldwell stated that she knew defendant was not J. Dags. No power of attorney was presented to Caldwell and Caldwell denied that she told the defendant to sign the name of any other person to the salvage certificate application. After the defendant returned the application to Caldwell, she then issued new title to the automobile in the name of defendant's business "Mr. D's Auto Sales."

(It was stipulated by the parties that Joan Dags was an agent of Motors Insurance Company and had authority to sign title transfers. Dags did not authorize or give permission to the defendant to sign her name.)

Defendant testified that he had purchased the automobile in question from John Bishop, who had allegedly given him a salvage title to the car and the power of attorney. According to the defendant, Bishop showed

that he had bought the car from Motors Insurance Company. The defendant stated that he gave this power of attorney to Hoagland at the Secretary of State's office and because of this alleged power of attorney, Delay testified that he believed the car was his. He signed the name "J. Dags" because Caldwell told him to sign the form and signed it in the manner set out on the microfilm copy of the salvage certificate. (The defendant had three years' experience with title applications involving an average of 18 to 20 transfers per month.)

Delay was charged with using a false name on a salvage certificate application in violation of section 4—105(e) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 4—105(e)). (He was also charged with forgery, but the trial court directed a verdict in favor of defendant on that offense.) During the instructions conference, defense counsel requested that the court instruct the jury that the State must prove that the defendant acted with criminal intent. This request was refused, Delay was convicted, he was sentenced to a 2-year term of imprisonment, and this appeal ensued.

The sole issue on appeal is whether criminal intent or some other mental state is a requisite element of the offense of using a false name on a vehicle registration or title application. The defendant relies upon section 4—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 4—9), which in essence provides that absolute liability may be imposed "if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability * * *." A violation of section 4—105(e) of the Vehicle Code (using a false name) is a Class 4 felony. Ill. Rev. Stat. 1977, ch. 95½, par. 4—108(b).

■■ Initially—and quite aside from the absolute liability aspect of the statute—it seems rudimentary and patently clear to us that a person simply is not permitted to sign someone else's name to a document and then deny knowledge of the falsity of the act or deny he possessed the intent to do the deed done. Such posture does violence to simple logic.

Now to the issue posited. The Illinois Supreme Court, in *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 375 N.E.2d 1297, recently held that section 4—9 of the Criminal Code is applicable to the penalty provisions of other statutes which are not a part of the Criminal Code. The court, in that case, held that the provision of the Motor Fuel Tax Law imposing a felony penalty for its violation did not exhibit a clear legislative intent to create absolute liability.

We conclude, however, that section 4—105 of the Vehicle Code does indicate a clear legislative intent to impose absolute liability. We note that, generally, motor vehicle regulations are regarded as absolute

liability offenses. (See, *e.g., People v. Strode* (1973), 13 Ill. App. 3d 697, 300 N.E.2d 323; *People v. Van Cura* (1977), 49 Ill. App. 3d 157, 364 N.E.2d 564.) Further, absolute liability has even been imposed for Vehicle Code violations involving felony penalties. See, *e.g., People v. White Brothers Equipment Co.* (1978), 63 Ill. App. 3d 445, 380 N.E.2d 396; *People v.·Walker* (1974), 18 Ill. App. 3d 351, 309 N.E.2d 716; *contra, People v. Nunn* (1978), 65 Ill. App. 3d 981, 382 N.E.2d 1305.

Beyond this general assumption regarding Vehicle Code offenses, we find the legislative history of section 4—105 to be of even greater importance. Under the 1965 statutes, section 4—103(a) through (d) set forth in substance the offenses listed in subsections (a), (b), (c), and (e) of the present section 4—105. (Ill. Rev. Stat. 1965, ch. 95½, par. 4—103(a)-(d).) Subsection (d) of the 1965 Act, for example, which was the counterpart to section 4—105(e), provided that it was an offense for a person who:

> "(d) *with fraudulent intent* uses a false or fictitious name or address, or makes a material false statement, or fails to disclose a security interest, or conceals any other material fact, in an application * * * ." (Emphasis added.) (Ill. Rev. Stat. 1965, ch. 95½, par. 4—103(d).)

In 1967, this provision was amended and the "fraudulent intent" language was eliminated. (Ill. Rev. Stat. 1967, ch. 95½, par. 4—103.1(e).) That is how section 4—105(e) presently reads.

○2 Where, as a result of an amendment or revision, words are stricken from the statute, it must be concluded that the legislature deliberately intended to change the law. (*Town of City of Champaign v. Overmeyer's Inc.* (1958), 18 Ill. App. 2d 523, 152 N.E.2d 752.) The inherent implication of the legislature's deletion of the specific mental state requirement is that neither intent nor any other criminal mental state is needed to impose liability under the present section 4—105(e).

Our construction of this statute is further supported by other provisions of section 4—105. For instance, under subsection (c) it is an offense to *possess* a forged title document only if the person *knows* of its forged or altered condition. The retention of "knowledge" as an element of this offense supports the presumption that the deletion of the fraudulent intent language was not the result of legislative oversight or inadvertence. The absence of similar language concerning a mental state with respect to the present offense implicitly indicates a legislative purpose to impose absolute liability.

Finally, we note that in determining legislative intent, a statute should be construed so as to give effect to every clause. (*Mid-South Chemical Corp. v. Carpentier* (1958), 14 Ill. 2d 514, 153 N.E.2d 72.) To read section

4—105(e) as requiring an element of intent to defraud would render subsection (f) superfluous, for it provides that it is a violation for any person to "[c]*ommit a fraud in connection with any application* under this Act." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 95½, par. 4—105(f).

Defendant has argued that section 4—105(g) indicates a clear legislative intent not to impose absolute liability. We are not persuaded by that argument. Subsection (g) of 4—105 makes it a felony offense for any person to "[w]ilfully violate any provision of Chapter 3 or 4 of this Act [ch. 95½, pars. 3—101 *et seq.*, 4—100 *et seq.*], *unless the violation is otherwise provided for in this Act.*" (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 95½, par. 4—105(g).) The use of a false name, however, is obviously otherwise provided for. Subsection (g) was intended as a catch-all provision and, therefore, cannot be construed as mandating a mental statement requirement of "wilfulness" as to the other offenses specifically provided for in section 4—105.

█ For these reasons, we conclude that the offense in question is an absolute liability crime and the judgment of the trial court will be affirmed accordingly.

Mr. Justice Green would affirm solely on the basis that defendant's obvious knowledge that he was placing a false name on the certificate application was a sufficient showing of mental state to comply with section 4—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 4—3). He would therefore hold that the evidence was sufficient to support the conviction and that the trial court properly refused to instruct the jury that criminal intent was a necessary element of the offense.

Judgment affirmed.

GREEN and CRAVEN, JJ., concur.