THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAROLD YARBROUGH *et al.*, Defendants-Appellants.

Fifth District   No. 5—86—0738

Opinion filed February 22, 1988.

Donald E. Groshong, of Alton, for appellants.

Don Sheafor, State's Attorney, of Vandalia (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Following a bench trial in the circuit court of Fayette County, defendants, Darold and Carol Yarbrough, were each convicted on nine counts of violating section 4—105(a)(5) of the Illinois Vehicle Code (Ill. Rev. Stat., 1984 Supp., ch. 95½, par. 4—105(a)(5)). Darold Yarbrough was sentenced to four years' imprisonment on each count, the sentences to run concurrently, and was ordered to pay a fine of $9,000 and to make restitution. Carol Yarbrough, Darold's wife, received four years' probation conditioned on, *inter alia*, her payment of a $9,000 fine and court costs, making restitution, and performing public service work. Both defendants now appeal, and three issues are presented for our review: (1) whether the indictments by which defendants were charged were defective; (2) whether the evidence was sufficient to prove defendants guilty beyond a reasonable doubt; and (3) whether the circuit court abused its discretion in sentencing Darold to a term of imprisonment. For the reasons which follow, we reverse.

Darold Yarbrough owned and operated a used car lot in Vandalia, Illinois. Carol worked for him in the office and handled all paperwork generated by the business, including the various title, tax, and other documents required by the State. The basis for their indictment and conviction in this case was false mileage information which they furnished to the Secretary of State regarding nine cars and trucks sold between January and May of 1985. All nine of those vehicles were owned by Darold. Most he sold directly from his lot. A few were sold for him by another dealer, Gary Dial, on consignment.

Eight of the nine vehicles were originally purchased by Darold

from Tri Ford, Inc., in Highland. The ninth he bought from Clinton County Motors in Breeze. None was newer than five years old. All had been driven substantial distances. Their mileage ranged from a low of 71,000 to a high of approximately 124,000. The evidence, when viewed in the light most favorable to the prosecution, established that after Darold bought these nine vehicles, he arranged to have their odometers rolled back. In this way, the vehicles were made to appear to have been driven far fewer miles than they actually were. In one instance, for example, the rollback eliminated more than 60,000 elapsed miles. That the odometers were being rolled back was known to Carol.

The odometer rollbacks are not, themselves, the subject of this case. What defendants are being prosecuted for is, instead, what occurred afterwards. When one of the vehicles was sold, its title would be transferred to the buyer by execution of the assignment of title, which appeared on the reverse side of the title certificate. (See Ill. Rev. Stat., 1984 Supp., ch. 95½, par. 3—113.) Normally the assignment was filled out by Carol. She would then sign Darold's name to it, as she was authorized to do under a power of attorney. Once this had been done, the executed, reassigned title, along with the seller's application for a new certificate of title, would be sent to the Secretary of State. See Ill. Rev. Stat., 1984 Supp., ch. 95½, par. 3—113.

Five of the nine vehicles involved here had titles which were issued after section 3—112.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 3—112.1) went into effect. As required by that statute, those titles included "odometer certifications" which had to be filled out and signed by Darold when the title was transferred to the buyer. The certifications read:

> "I certify to the best of my knowledge that the odometer reading is and reflects the actual mileage of the vehicle unless one of the following statements is checked.
>
> ( ) 1. The amount of mileage stated is in excess of 99,999 miles or
>
> ( ) 2. The odometer reading is not the actual mileage."

In executing the transfer of those five titles which included the certifications, Darold was required to state the odometer reading at the time of transfer, the date of the transfer, and his name and address in spaces provided for this purpose on the title form next to the odometer certifications. (See Ill. Rev. Stat. 1985, ch. 95½, par. 3—112.1(b).) This was done in each case. On one of the titles, the certification indicated that the odometer reading did not show the actual miles. The remaining four did not. Because Darold had had the odom-

eters of all the vehicles rolled back, his odometer certifications for those vehicles were therefore false.

The other vehicles had titles issued before the foregoing legislation took effect and did not include odometer certifications. When the titles to those vehicles were transferred, mileage readings were nevertheless written in by the Yarbroughs on the back of the title forms at the bottom of the spaces provided there for execution of the assignment of title. Given the odometer rollbacks, these mileage notations were also incorrect.

Based upon the false mileage information which was placed on the title forms, the Yarbroughs were each indicted on nine counts of violating section 4—105(a)(5) of the Illinois Vehicle Code (Ill. Rev. Stat., 1984 Supp., ch. 95½, par. 4—105(a)(5)), a Class 2 felony. Specifically, the indictment charged that as to each of the nine vehicles in question, the Yarbroughs had committed the offense of "False or Fraudulent Application for Certificate of Title" in that "in making an application for an automobile certificate of title under the Illinois Vehicle Code on behalf of [the buyer], [they] knowingly made a material false statement," in that they stated on the title that the vehicle had a certain mileage "when they knew the said mileage" to be higher.

■ On this appeal, defendants first argue that the indictment was defective because it failed to properly allege conduct prohibited by the statutory provision they are claimed to have violated. That statute provides, in part, that it is a felony to "make a material false statement *** on any application for any *** certificate of title." (Ill. Rev. Stat., 1984 Supp., ch. 95½, par. 4—105(a)(5).) Defendants point out, however, that the indictment here does not allege that the false statements in question were made on the actual applications for new title certificates. Rather, it is premised on false statements made on the assignments of the old titles which were submitted in support of the new title applications. In defendants' view, false statements on those documents do not fall within the prohibition of that portion of section 4—105(a)(5) (Ill. Rev. Stat., 1984 Supp., ch. 95½, par. 4—105(a)(5)) cited above.

The State responds that an "application" for a new certificate of title as that term is used in the foregoing provision of section 4—105(a)(5) (Ill. Rev. Stat., 1984 Supp., ch. 95½, par. 4—105(a)(5)) must be understood to include not only the application form itself, but also any of the other documents, including the old title form containing the assignment of title, which must be submitted to the Secretary of State along with the application form in order for a new title to be issued. We cannot accept this interpretation.

Criminal or penal statutes are to be strictly construed in favor of an accused, and nothing is to be taken by intendment or implication against him beyond the literal or obvious meaning of the statute. (*People v. Miller* (1984), 128 Ill. App. 3d 574, 580, 470 N.E.2d 1222, 1226.) While a court must give effect to the legislative intent and must not read a statutory enactment so rigidly as to defeat that intent (*People v. Jordan* (1984), 103 Ill. 2d 192, 205, 469 N.E.2d 569, 575), the specific words of a statute are the best indicators of legislative intent. (*People v. Miller* (1984), 128 Ill. App. 3d 574, 580, 470 N.E.2d 1222, 1226.) The statute must be read as a whole and all relevant parts considered. (*People v. Anderson* (1986), 143 Ill. App. 3d 567, 569, 493 N.E.2d 410, 412.) Where the same words appear in different parts of the same statute, they will be given a consistent interpretation, absent legislative intent to the contrary. *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 1044, 448 N.E.2d 178, 181.

●2 The provisions of the Vehicle Code contain numerous other references to "applications" for certificates of title. For example, section 3—104 provides that applications for the first certificate of title of a vehicle in Illinois must be made on the form prescribed by the Secretary of State. (Ill. Rev. Stat., 1984 Supp., ch. 95½, par. 3—104.) Section 3—112, dealing with an owner's transfer of his interest in a vehicle, speaks of the transferee executing "the application for a new certificate of title" and mailing or delivering "the certificate [of title] *and* application" to the Secretary of State. (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 95½, par. 3—112(b).) Section 3—113, concerning transfers to or from dealers, likewise refers to mailing or delivering the certificate of title to the Secretary of State along with the transferee's application for a new certificate. (Ill. Rev. Stat., 1984 Supp., ch. 95½, par. 3—113(a).) In addition, section 3—116, which specifies when the Secretary of State is to issue a new title certificate, speaks of the Secretary's receipt "of a properly assigned certificate of title, *with* an application for a new certificate of title, the required fee and any other documents required by law" as part of this process. (Emphasis added.) Ill. Rev. Stat. 1983, ch. 95½, par. 3—116(a).

In each of these instances the "application" is clearly regarded as something separate and distinct from the assignment of title and the other materials that are necessary before a new title certificate will be issued. Accordingly, we believe that when the legislature referred to "applications" in section 4—105 of the Vehicle Code (Ill. Rev. Stat., 1984 Supp., ch. 95½, par. 4—105), it intended to refer only to the title application form itself. Such a construction is further supported by the language of section 4—105(a)(5). That provision expressly pro-

hibits making a material false statement "on" any application for a certificate of title. If the legislature had not intended to refer to the actual application form, we believe that it would not have used this preposition, but would instead have used the phrase "in connection with" any application, as it did later in the same paragraph. Given this construction, we are constrained to agree with defendants that providing false mileage information on the old titles, as they were alleged to have done in the indictment, is not equivalent to making a material false statement on an application for a new title certificate, which is what section 4—105(a)(5) prohibits.

■ Section 4—105(a)(5) is not, of course, limited in its coverage to the making of material false statements on application forms for certificates of title. It also prohibits the commission of a fraud. Unlike material false statements, the fraud need not be made on the application form, but is prohibited even if committed simply "in connection with" any application made under the Vehicle Code. Falsifying odometer readings on assignments of old titles submitted along with applications for new title certificates could constitute a fraud within the meaning of this statute. Although, as we have noted, the indictment by which defendants were charged describes the offense they are alleged to have committed as "False or Fraudulent Application for Certificate of Title," the body of the indictment nowhere asserts that defendants' conduct constituted fraud, and the State has cited no authority suggesting that knowingly placing false odometer readings on title certificates constitutes fraud as a matter of law.

■■ The State points out that defendants failed to raise the issue of the sufficiency of the indictment in the trial court. As a result, the indictment is subject to less stringent standards than would otherwise be the case. According to our supreme court, the omission of a material element does not *per se* render a charge void. (*People v. Walker* (1980), 83 Ill. 2d 306, 314, 415 N.E.2d 1021, 1025.) When challenged for the first time on appeal, a charge will be held sufficient if " 'it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct.' " (*People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440, quoted in *People v. Holman* (1987), 157 Ill. App. 3d 764, 770, 510 N.E.2d 1139, 1142.) Even if, *arguendo*, the indictment here was sufficient under the foregoing standard to charge defendants with fraud, the evidence was insufficient to sustain their convictions on that charge. Accordingly, those convictions must nevertheless be set aside.

■ Neither intent nor any other criminal mental state is needed

to impose liability under section 4—105(a)(5) (Ill. Rev. Stat., 1984 Supp., ch. 95½, par. 4—105(a)(5)) for making a material false statement on an application for a certificate of title. (*People v. Delay* (1979), 70 Ill. App. 3d 712, 715, 388 N.E.2d 1316, 1319, *cert. denied* (1980), 446 U.S. 928, 64 L. Ed. 2d 281, 100 S. Ct. 1865.) The same is not true where the charge is commission of a fraud. (70 Ill. App. 3d at 716, 388 N.E.2d at 1319.) Generally, in Illinois fraud consists of a concealment of an existing fact accompanied by *scienter*, deception and injury. (*Cummings v. Dusenbury* (1984), 129 Ill. App. 3d 338, 346, 472 N.E.2d 575, 581.) Similarly, the courts of Illinois have uniformly held that fraudulent intent is a necessary element of actionable fraud. (*People v. L & M Liquors, Inc.* (1976), 37 Ill. App. 3d 117, 121, 345 N.E.2d 817, 820.) We therefore believe that the crime of committing a fraud in connection with an application for a title certificate under section 4—105(a)(5) (Ill. Rev. Stat., 1984 Supp., ch. 95½, par. 4—105(a)(5)) requires an intent to defraud, even though this element is not expressly mentioned in the statute. See *L & M Liquors, Inc.*, 37 Ill. App. 3d at 122, 345 N.E.2d at 821.

■ Where, as here, intent is an element of the crime, it must be proved by the State beyond a reasonable doubt. (37 Ill. App. 3d at 122, 345 N.E.2d at 821.) In this case, the State failed to meet this burden of proof. Indeed, the issue of whether the defendants acted with an intent to defraud was never even directly addressed. Instead, the focus of the inquiry was merely on whether the odometer readings placed on the old title certificates were false and were known to be false by the defendants.

Defendants raise additional challenges to the sufficiency of the indictment and of the evidence, in addition to contesting the propriety of the sentence of imprisonment imposed on Darold. In light of our disposition of the case, however, these claims need not be reached.

For the foregoing reasons the judgment of the circuit court of Fayette County is reversed.

Reversed.

WELCH and LEWIS, JJ., concur.