(No. 46688.—

RAYMOND B. PATCHETT, Appellee, v. JAMES BAY-LOR, Director of Department of Insurance, Appellant.

*Opinion filed Jan. 20, 1976.—Rehearing denied March 25, 1976.*

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel and Bonny Sutker Barezky, Assistant Attorneys General, of Chicago, of counsel), for appellant.

John Bernard Cashion and Paul F. Davidson, both of Chicago, for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, James Baylor, Director of the Illinois Department of Insurance, revoked the individual insurance broker's license and the agent's license of the plaintiff, Raymond B. Patchett, and also revoked the firm license held by K. W. Patchett & Son Agency, of which the plaintiff is the only designated member. The ground for the license revocation was the violation by the plaintiff of section 502 of the Illinois Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 1065.49). The plaintiff filed a petition for administrative review in the circuit court of Kankakee County, and that court entered a judgment setting aside the defendant's order and directing that the plaintiff's licenses be reinstated. The court's judgment rested on a holding that section 502 was unconstitutional because it violated the due process and equal protection clauses of the State and Federal constitutions. The defendant appealed directly to this court under Rule 302(a). We reverse.

The plaintiff served as an agent for Gulf Group Insurance Companies. His arrangement with Gulf included

the authority to settle claims by policyholders for amounts less than $250. For this purpose Gulf had furnished the plaintiff with books of blank drafts drawable upon Gulf.

The proceedings here were initiated by a letter to the plaintiff from the defendant on June 5, 1972, in which the plaintiff was advised that Gulf had submitted "documented evidence of highly irregular activities by you through your ·claim draft authority." The letter then stated that the Department of Insurance found these activities to be in violation of subsections (d) and (f) of section 502. The closing paragraph of the letter stated:

> "The Department of Insurance hereby revokes your individual broker's and agent's licenses and revokes the firm license of the K. W. Patchett & Son Agency ***. This order will be final 30 days from the date of mailing. You may request a hearing by writing to the Department of Insurance ***."

The plaintiff did request a hearing, and on July 28, the defendant sent the plaintiff a notice of a hearing which was to take place in September. The notice stated that the purpose of the hearing was to determine "whether the Director of Insurance should revoke or suspend your licensing authority." The notice also advised the plaintiff that the Department would determine in the hearings:

> "*** if you have knowingly made false claims on behalf of policyholders, whether these claims were prepared at your request, unknown to your policyholders, and whether you improperly and without permission affixed. these policyholders' signatures onto claim drafts prepared by you."

The notice then gave the names and addresses of several persons who were said to have submitted statements and affidavits attesting to the charges previously specified.

The hearing was presided over by a hearing officer who was an attorney employed by the Department of Insurance, although in another branch of the Department which did not deal with the licensing of agents. Testimony supporting the charges against the plaintiff was given by

Gulf policyholders and by Thomas J. Nolan, an employee of Gulf who had made an investigation into the transactions engaged in by the plaintiff.

Some 15 drafts drawn on Gulf and made payable to named policyholders or contractors were introduced into evidence. One of these policyholders testified that although a draft payable to him purported to be in payment for wind damage to his property, he had in fact suffered no such damage, and that no repairs on his property had ever been made. Although the draft showed an endorsement by the policyholder to the plaintiff, the policyholder testified that the endorsement was not his signature. This draft, as was the case with many others, was deposited in a bank account of the plaintiff.

Mr. Nolan testified that prior to the hearing, in the course of his investigation, he had had a conversation with the plaintiff regarding this and similar transactions, and that at that time the plaintiff delivered to Nolan his check payable to Gulf in the amount of $4,069.91, which represented a total, compiled by the plaintiff, of the drafts which had been drawn in question.

The plaintiff did not himself testify at the hearing, nor did he offer any evidence in his own behalf. He was represented at the hearing by counsel, however, and the latter was permitted to and did cross-examine the witnesses.

At the close of the hearing, the hearing officer prepared written findings. These findings, after describing the evidence introduced, stated:

> "The manifest weight of the evidence in the entire record substantially supports only one logical conclusion, and that is that Mr. Patchett was dishonest in his handling of claim drafts for Gulf Insurance, and that he converted to his own use funds belonging to others. Further, on the basis of the record I am of the opinion that Mr. Patchett has not demonstrated trustworthiness and competency to transact business as an insurance agent in such a manner as to safeguard the public."

The hearing officer accordingly recommended that the plaintiff's licensing authority be revoked. This recommendation was adopted by the defendant in an order dated November 3, 1972.

Section 502 of the Insurance Code provides in pertinent part as follows:

"A request for a license or the request for the renewal of a license may be refused, a license may be suspended, but not to exceed 2 years, or a license may be revoked, if the Director of Insurance finds that the holder of or the applicant for such license:

* * *

(d) Has been guilty of fraudulent or dishonest practices; or

***

(f) Has not demonstrated trustworthiness and competency to transact business as an insurance agent, broker or solicitor in such manner as to safeguard the public; ***.

If a request for a license or the request for the renewal of a license be refused or a license having been issued be revoked or suspended, the Director shall serve upon the applicant for or holder of such license the order of suspension or revocation, either personally or by mail, and if by mail, such service shall be completed if such notice be deposited in the post office, postage prepaid, addressed to the last known address specified in the application to qualify for license. The order of revocation or suspension shall take effect 30 days from the date of mailing but shall be stayed if within the 30-day period the applicant or licensee has in writing requested a hearing."

As appears from a memorandum of opinion supplementing the judgment order, the principal basis for the circuit court's adjudication that section 502 is unconstitutional was that the section sets forth no criteria for determining whether the sanction imposed upon a license holder found to have engaged in a type of conduct enumerated in the section is to be the revocation of his license or merely its suspension. In the view of the circuit court, the section thus empowers hearing officers "to make various recommendations upon similar sets of facts,

which would affect different licensees differently, in one case suspension—another case revocation."

Licensure acts, as well as other statutes which proscribe certain defined activities on the part of the persons regulated, quite commonly authorize a range of sanctions which differ in their severity. Section 502, in empowering the defendant to order suspension rather than outright revocation of a license, provides a flexibility which the legislature deemed desirable to enable the Department of Insurance to deal adequately with the varied factual situations that might confront it.

Since orders issued by the defendant are subject to judicial review, the courts retain the power to set aside an order of revocation where it is based on what may be a merely technical violation, or where the order is otherwise arbitrary or capricious. But within those limitations an agency enjoys a wide discretionary power to tailor the sanction to the nature and circumstances of the misconduct. (*People ex rel. Stephens v. Collins* (1966), 35 Ill.2d 499; *Dorfman v. Gerber* (1963), 29 Ill.2d 191.) We do not conceive that the legislature may authorize alternative sanctions only if it also lays out a finely calibrated schedule for their application in individual cases. The plaintiff has not established that the actions on his part which form the basis of his license revocation were minor, inadvertent or isolated. On the contrary, it is apparent that these violations were serious, and that they continued over a period of more than one year.

In its memorandum of opinion the circuit court also stated that section 502 was constitutionally defective because a hearing was not required before a license was revoked, and both parties have addressed themselves to the question of whether the Constitution requires a hearing prior to the revocation of a license, or prior to other types of administrative action which may deprive an individual of licensure, employment, or other benefits. Such considerations are not germane to the present case, however.

It is true that the initial letter to the plaintiff from the defendant of June 5, 1972, did state that the defendant "hereby revokes" the plaintiff's license. It is apparent from section 502 itself, however, as well as from the procedure followed in this case, that actual revocation does not take place until after a hearing, assuming that one is requested by the licensee. The revocation of the plaintiff's licenses did not take place until the defendant's order of November 3, and that order was based upon the findings made by the hearing officer as the result of the hearing.

The circuit court also concluded that the plaintiff was deprived of a claimed constitutional right to a hearing before an impartial arbiter. One ground of this conclusion was that the defendant, as evidenced by his letter of June 5, had already prejudged the case by deciding that the plaintiff had violated section 502. We have disposed of this contention above. The second ground was that the hearing officer, since he was an appointee of the defendant, could not be a fair and impartial judge.

There is no evidence whatever that the hearing officer was biased or that he had any personal or pecuniary interest in the subject matter of the hearing, or that he had even played any role in the investigative activities of the Department which led to the hearing. We thus do not need to consider here the extent to which the investigative and adjudicative functions of an agency may constitutionally be combined in one person. (See *Withrow v. Larkin* (1975), 421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456.) The judgment of the circuit court is predicated on the far broader thesis that no administrative agency having responsibilities for enforcing a statute may designate any of its employees to make a recommendation or decision on a matter which comes before it for adjudication. The consequence of that view would be that no single agency could ever be given investigative, prosecutorial and adjudicative functions, regardless of the degree to which the exercise of these functions were divided within the agency.

Such a restricted doctrine is devoid of precedential support, and its adoption would plainly prove unworkable.

We hold, therefore, that the judgment of the circuit court declaring section 502 of the Insurance Code to be unconstitutional was erroneous.

The circuit court, although premising its decision primarily on the constitutional considerations disposed of above, also held that defendant's order was against the manifest weight of the evidence. Neither the judgment nor the memorandum of opinion by the circuit court specifies those respects in which the defendant's order is faulty in this regard, nor does the plaintiff suggest any in his brief. We have reviewed the evidence given before the hearing officer, and we conclude that his findings are not contrary to the manifest weight of the evidence, but that the order of revocation is amply supported by the findings and the evidence.

In his brief the plaintiff advances the additional contention, not referred to by the circuit court, that section 502(d), which makes the commission of "fraudulent or dishonest practices" a ground for license revocation, is unconstitutional because the quoted term is impermissibly vague. Seen in the context of the Insurance Code and of the revocation order issued in this proceeding, the statutory term is not susceptible to the objection made by the plaintiff. It can hardly be supposed that an insurance agent would entertain any doubt whatever but that the fabrication of insurance claims and the application of payments thereon to his own use would constitute a "fraudulent or dishonest" practice in the conduct of the business in which he had been licensed to engage.

The judgment of the circuit court of Kankakee County is therefore reversed.

*Judgment reversed.*