JIM M'LADY OLDS, INC., Petitioner-Appellant, v. THE SECRETARY OF STATE *et al.*, Respondents-Appellees.

First District (1st Division)   No. 86—1483

Opinion filed October 13, 1987.

Callahan, Fitzpatrick, Hirst & LaKoma, of Oak Brook (Eugene G. Callahan and Matthew W. LaKoma, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Kathryn A. Spaulding, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Jim M'Lady Olds, Inc. (petitioner), brought this suit for judicial review to reverse the 30-day suspension of its automobile dealership license by respondent, the Secretary of State of Illinois. At the administrative hearing, the record shows that Quinton Brown testified that he traded in a 1979 Buick on October 5, 1983, when he purchased a 1983 Oldsmobile from petitioner. Mr. Brown signed the odometer statement even though his wife Elimina was listed as transferor. The

odometer statement indicated "96 [sic]" miles. Furthermore, Mr. Brown signed a title assignment leaving the mileage figure blank. He testified that the figure which was inserted on the assignment was not in his or his wife's handwriting. However, on cross-examination, he testified that he was not sure whether his wife inserted a mileage figure.

Charles Barney, the general manager of Norm Buick, testified that the Browns visited him on September 30, 1983, inquiring as to the trade-in allowance for their car. At this time, he observed that the odometer read in excess of 90,000 miles. He next observed the Browns' Buick on October 5, 1983, at 8:20 p.m. parked adjacent to Jim M'Lady's car lot. Mr. Barney observed that the odometer now read 42,052.

An investigator for the Secretary of State, Lyle Pratt, testified to the chain of custody of the 1979 Buick. He testified that Jim M'Lady Olds transferred title to Boban Brothers, a used car dealership in Joliet, Illinois.

Based on this evidence, the hearing officer for the Secretary of State determined that sufficient evidence existed that the odometer had been rolled back by Jim M'Lady Olds in violation of sections 3—112.1 and 5—501(a)(2), (a)(3) and (a)(13) of the Illinois Motor Vehicle Code. (Ill. Rev. Stat. 1983, ch. 95½, pars. 3—112.1, 5—501(a)(2), (a)(3), (a)(13).) The hearing officer recommended that petitioner's dealership license be revoked. On October 3, 1985, the Secretary of State determined that the above sections of the Code had been violated, and entered an order revoking the dealership license for 30 days.

The circuit court affirmed the decision of the Secretary of State. Petitioner appeals this affirmance.

I

Petitioner initially argues that the Secretary of State's finding that it violated section 5—501(a)(2) (Ill. Rev. Stat. 1983, ch. 95½, par. 5—501(a)(2)) constitutes a denial of due process because it never received adequate notice of this charge and accordingly did not have an opportunity to prepare a defense. The first amended notice of hearing charged petitioner with violating sections 5—501(a)(3), (a)(13), and 3—112.1 of the Illinois Vehicle Code. (Ill. Rev. Stat. 1983, ch. 95½, pars. 5—501(a)(3), (a)(13), 3—112.1.) Petitioner was never charged with violating section 5—501(a)(2), but the Secretary of State, relying on the recommendations of the hearing officer, found that the petitioner violated this section in addition to those sections that were charged.

■■ ■ It is well-established law that although charges filed before

an administrative agency need not be drawn with the same refinements and subtleties as pleadings in a court proceeding, "the charges must be specific enough to apprise the respondent of the charges brought against him so as to enable him to intelligently prepare his defense." (*Batley v. Kendall County Sheriff's Department Merit Com.* (1981), 99 Ill. App. 3d 622, 626, 425 N.E.2d 1201, 1205; see *Wierenga v. Board of Fire & Police Commissioners* (1976), 40 Ill. App. 3d 270, 274, 352 N.E.2d 322, 326.) In the instant case, petitioner was not charged with violating section 5—501(a)(2). Petitioner obviously could not prepare an intelligent defense to meet this charge. It was error for the Secretary of State to base its decision on a provision that had not been charged.

■ This error, however, was harmless because it would not affect the outcome of the case. (See *Forberg v. Board of Fire & Police Commissioners* (1976), 40 Ill. App. 3d 410, 412, 352 N.E.2d 338, 340.) The record amply supports violations of the other provisions which were charged. Any one of these violations standing alone would be enough to sustain a suspension of petitioner's dealership license for 30 days.

## II

Petitioner next contends that the Secretary of State failed to show that it violated section 5—501(a)(3) of the Illinois Vehicle Code. (Ill. Rev. Stat. 1983, ch. 95½, par. 5—501(a)(3).) Section 5—501(a)(3) states that a licensee's license can be suspended if it has "[b]een guilty of a fraudulent act in connection with selling, bartering, exchanging, offering for sale or otherwise dealing in vehicles, bodies and component parts." Petitioner argues that the phrase "[b]een guilty of a fraudulent act," implies that a prior criminal conviction is necessary to satisfy the terms of this provision, relying on *Lindsey v. Edgar* (1984), 129 Ill. App. 3d 718, 473 N.E.2d 92, and *Do-Right Auto Sales v. Howlett* (N.D. Ill. 1975), 401 F. Supp. 1035, in support of its argument. In both *Lindsey* and *Do-Right*, the terms of section 5—501(a)(3) were satisfied by a prior criminal conviction for fraud. While these decisions noted that a prior criminal conviction may constitute a basis for revocation, they do not mandate a prior criminal conviction in every case.

Use of the word "guilty" does not necessarily connote a criminal adjudication. Rather, it indicates general wrongdoing or failure to follow prescribed conduct. (Webster's Third New International Dictionary 1010 (1981).) We agree with the conclusion of the trial court that if the legislature had intended a prior criminal conviction as a predicate for a section 5—501(a)(3) offense, "it would have used the words

such as 'commission of a crime, misdemeanor or felony' to denote that the Act must be limited to past criminal convictions." Indeed, in other contexts, the legislature has expressly provided for the suspension or revocation of a professional license for the conviction of a crime. (Ill. Rev. Stat. 1983, ch. 111, pars. 3420(3), 4433(3) (nurses, doctors, and podiatrists, respectively).) We will not include words in a statute that the legislature has not expressly or implicitly provided. *Belfield v. Coop* (1956), 8 Ill. 2d 293, 307, 134 N.E.2d 249, 256.

■ Petitioner alternatively argues that section 5—501(a)(3) is unconstitutional because the language in question is impermissibly vague. This argument is meritless because, as we have already concluded, the term "guilty" means either a criminal adjudication or general wrongdoing. Moreover, it is specious to argue that an automobile dealership would not know beyond any doubt that rolling back an odometer would constitute a "fraudulent act." The supreme court in *Patchett v. Baylor* (1976), 62 Ill. 2d 426, 434, 343 N.E.2d 484, 488-89, rejected a similar argument concerning a provision of the insurance code when it stated:

> "It can hardly be supposed that an insurance agent would entertain any doubt whatever but that the fabrication of insurance claims and the application of payments thereon to his own use would constitute a 'fraudulent or dishonest' practice in the conduct of the business in which he had been licensed to engage." (62 Ill. 2d 426, 434, 343 N.E.2d 484, 488-89.)

The provision in question is not so vague that persons of common intelligence must guess as to its meaning. (*Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 299-300, 395 N.E.2d 1376, 1381.) Thus, the provision is not unconstitutionally vague and petitioner's due process rights were not violated.

### III

We next consider petitioner's position that the Secretary of State's findings were insufficient for him to conclude that it violated section 3—112.1. (Ill. Rev. Stat. 1983, ch. 95½, par. 3—112.1.) Under section 3—112.1, it is a violation to make an inaccurate or untruthful odometer statement with the intent to defraud. Petitioner contends that since the Secretary of State did not expressly find that it made an untruthful odometer statement with intent to defraud, no violation of this section was shown.

■■ It is well-settled law that the purpose of agency findings in an administrative proceeding is to permit orderly and efficient judicial review. (*Telcser v. Holzman* (1964), 31 Ill. 2d 332, 338, 201 N.E.2d

370, 373.) Where such findings are sufficient to permit the reviewing court to make an intelligent decision, the standard is met. (*Bodine v. Civil Service Com.* (1985), 134 Ill. App. 3d 341, 344, 480 N.E.2d 160, 163.) Indeed, where the testimony before the administrative agency is preserved for review in the record, specific findings of fact by the agency are not necessary for judicial review. *Mahonie v. Edgar* (1985), 131 Ill. App. 3d 175, 178, 476 N.E.2d 474, 477; *O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 657, 456 N.E.2d 998, 1005.

■■ The Secretary of State's findings of fact clearly support the conclusion that section 3—112.1 was violated. He found that the Browns' 1979 Buick had 96,000 miles on the odometer when petitioner received it. The Browns did not put the odometer reading on the title assignment form. The form submitted by petitioner to the Secretary of State's office indicated the odometer reading as 42,095 miles. This false statement of the mileage on the title assignment was obviously intended to defraud a later purchaser of the Browns' Buick. Thus, petitioner made an untruthful odometer statement with intent to defraud, satisfying the elements for a section 3—112.1 violation.

Assuming, *arguendo*, the Secretary of State had made no findings of fact, his conclusions would still be supported by the record of the proceedings before the hearing officer. Either the Secretary's findings of fact or the record as a whole is sufficient to allow us to make an intelligent decision. Thus, it was clearly shown that petitioner violated section 3—112.1.

## IV

Petitioner finally contends that the Secretary of State's conclusion that an odometer rollback occurred was against the manifest weight of the evidence. It claims that the Secretary of State relied on hearsay and contradictory evidence in reaching his conclusion.

■■ ■ Upon administrative review, the function of both the trial court and the appellate court is limited to determining whether the findings and conclusions of the administrative agency are against the manifest weight of the evidence. (*Eastman Kodak Co. v. Fair Employment Practice Com.* (1981), 86 Ill. 2d 60, 75-76, 426 N.E.2d 877, 884.) Section 3—110 of the Code of Civil Procedure provides that "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) The findings of the administrative agency, however, must rest upon competent evidence and be supported by substantial proof. (*Murdy v. Edgar* (1983), 117 Ill. App. 3d 1091, 1094, 454 N.E.2d 819, 822.) The court may not reweigh the evi-

dence or rejudge the credibility of the witnesses. (*Giampa v. Civil Service Com.* (1980), 89 Ill. App. 3d 606, 614, 411 N.E.2d 1110, 1116.) With these general rules in mind, we turn to the merits of the petitioner's arguments.

Petitioner argues that the Secretary of State's finding that the petitioner rolled back the odometer is based on no more than the inadmissible hearsay testimony of Investigator Lyle Pratt. In addition, it argues that the testimony of Charles Barney and Quinton Brown is inconsistent and conflicting and, accordingly, does not support the Secretary of State's findings.

Our review of the record reveals that there was other evidence besides Pratt's testimony which shows that petitioner rolled back the odometer. The record states that at the time the Browns traded in their car, it had in excess of 96,000 miles. It further shows that on direct examination Brown testified that neither he nor his wife inserted a mileage figure on the assignment of title. The assignment of title submitted to the Secretary of State's office had an odometer reading of 42,095 miles.

In addition, the record shows that Charles Barney appraised the Browns' car prior to the trade-in at the petitioner's dealership. At this time the odometer showed a reading in excess of 96,000 miles. However, after the trade-in, Charles Barney observed the odometer, which read 42,052 miles.

The testimony of Brown and Barney clearly shows that someone at petitioner's dealership altered the odometer and inserted a false figure on the odometer statement. The differences between their testimony are not sufficient for us to conclude that the Secretary of State erred in relying on this evidence. We cannot reweigh the credibility of these witnesses, and based on the record before us, we conclude that their testimony was competent. With this competent testimony in the record, the admission of Pratt's hearsay statements was harmless error. (*Goranson v. Department of Registration & Education* (1980), 92 Ill. App. 3d 496, 501, 415 N.E.2d 1249, 1253.) Thus, the Secretary of State's decision was based on ample proof and was not against the manifest weight of the evidence.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINLAN, P.J., and O'CONNOR, J., concur.