460

(No. 66752.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DAROLD YARBROUGH *et al.*, Appellees.

*Opinion filed May 17, 1989.*

Neil F. Hartigan, Attorney General, of Springfield, and Don Sheafor, State's Attorney, of Vandalia (Robert Ruiz, Solicitor General, and Terence M. Madsen and Michele I. Lavin, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, Stephen E. Norris and Gerry R. Arnold, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Donald E. Groshong, of Alton, for appellees.

JUSTICE STAMOS delivered the opinion of the court:

Following a bench trial in the circuit court of Fayette County, defendants, Darold and Carol Yarbrough, were each convicted of nine counts of automobile title fraud in violation of section 4—105(a)(5) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 4—105(a)(5)). The trial court sentenced defendant Darold Yarbrough to four years' imprisonment on each count, the sentences to run concurrently, and fined him $1,000 on each count. The trial court sentenced defendant Carol Yarbrough to four years' probation, conditioned upon payment of a $1,000 fine on each count and performing 10 hours of community service per week. The appellate court reversed defendants' convictions (166 Ill. App. 3d 782), and we allowed the State's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The issue before this court is whether defendants' conduct of filling out mileage figures, later shown to be false, on certificates of title which were sent to the Secretary of State violated section 4—105(a)(5).

Both defendants were indicted on nine counts of violating section 4—105(a)(5). Each count of the indictment concerned a different used vehicle sold by Darold to a purchaser, and alleged that both defendants committed the offense of "FALSE OR FRAUDULENT APPLICATION FOR CERTIFICATE OF TITLE, in that said defendants in making an application for an automobile certificate of title under the provisions of the Illinois Vehicle Code on behalf of ____, knowingly made a material false statement, in that they stated on title #____, the mileage of a 197____, VIN #____ to be ____ [miles] when they knew the said mileage to be ____ miles in violation of Paragraph 4—105 A5 [*sic*], Ch. 95½, Ill. Rev. Stat." (Blanks were filled with particulars of each count.)

Section 4—105(a)(5) states that it is a violation of the Code for:

"a person to *** make a material false statement, or fail to disclose a security interest, or conceal any other material fact on any application for any manufacturers statement of origin, certificate of title, *** or commit a fraud in connection with any application under this Act." Ill. Rev. Stat. 1985, ch. 95½, par. 4—105(a)(5).

Darold owned and operated a used-car lot in Vandalia, Illinois, at which his wife, Carol, worked. She acted as the bookkeeper for the business, and completed most of the paperwork generated by the business including Federal and State revenue forms, odometer statements, bills of sale and new title applications.

Darold purchased eight of the nine vehicles involved here from Tri-Ford, Inc. (Tri-Ford), another automobile dealership, and the ninth vehicle from another dealership, Clinton County Motors. All nine vehicles were in used condition when purchased, and all had significantly high mileage figures, ranging from 71,000 to 124,000 miles. Darold sold six of the vehicles directly to third parties; three of the vehicles were sold on consignment by Gary Dial, who owned his own used-car business.

The sale of the nine vehicles to Darold from Tri-Ford and Clinton County Motors constituted the first reassignment of title by a dealer and generated a bill of sale and Federal odometer statement. When one of the vehicles was sold, its title would be transferred to the buyer by execution of the assignment of title, which involved filling out the reverse of the existing certificate of title (the surrender title). (See Ill. Rev. Stat. 1985, ch. 95½, par. 3—113.) The surrender titles did not always accompany the actual transfer of the vehicle; in some cases, the surrender title was later mailed or delivered to defendants.

Testimony at trial established that in all cases concerning the nine vehicles here, the back side of the surrender titles was undated and endorsed in blank by both the last record owner, as seller, and by Tri-Ford or Clin-

ton County Motors as the subsequent dealer. Carol filled out the assignment of title on the back side of the surrender titles and in some cases signed Darold's name.

Five of the nine vehicles involved here had certificates of title which were issued after section 3—112.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 3—112.1) went into effect. Section 3—112.1 requires that titles issued after 1980 contain an odometer certification, requiring each transferor of a motor vehicle to state on the title form: (1) the odometer reading at the time of transfer; (2) the date of transfer; and (3) the transferor's name and current address. (Ill. Rev. Stat. 1985, ch. 95½, par. 3—112.1(b).) If applicable, the transferor is also supposed to check the box on the title form next to one of two sentences which state that the "amount of mileage stated is in excess of 99,999 miles" or the "odometer reading is not the actual mileage" and sign the certificate of title. Ill. Rev. Stat. 1985, ch. 95½, par. 3—112.1(a).

Of the five certificates of title issued after the effective date of section 3—112.1, none contained this information when they were received by defendants from Tri-Ford or Clinton County Motors. Carol filled out this information on these five surrender titles; on only one surrender title was the box checked next to the statement that the odometer reading was not the actual mileage.

Of the three cars sold by Gary Dial, two of which required the mileage certification under section 3—112.1, Dial filled out the purchaser's application for a new certificate of title; he never filled out the reverse of the surrender title. Carol filled out the backs of the surrender titles of those cars. Dial testified that he obtained the mileage figures he entered on the title applications from the odometers of the cars. Carol testified that she relied on the figures Dial used in the new title applications when filling out the odometer certification on the surrender titles of the cars Dial sold on consignment.

Although four vehicles had titles issued before section 3—112.1 was applicable, and did not contain or require an odometer certification to be filled out, Carol wrote in mileage figures on the backs of the surrender titles for those four vehicles.

There was conflicting testimony at trial on whether the Federal odometer statements executed in connection with the sale of the nine vehicles here from Tri-Ford and Clinton County Motors to Darold were: (1) delivered to defendants at the time of the transfer of the cars; and (2) signed in blank by Tri-Ford and Clinton County Motors. Carol testified that not all the odometer statements accompanied delivery of the vehicles, and that none of the nine odometer statements for the nine vehicles involved here were completed and filled out when received by defendants.

The sales manager of Tri-Ford at the time the eight vehicles were sold to Darold testified that an odometer statement always accompanied a car delivered to and purchased by defendants, and that the odometer statements were never signed in blank; the only thing that would be left blank on the statements, he testified, was the line where Darold, as purchaser, was supposed to affix his signature.

According to Carol's testimony, when a transaction was made at Yarbrough Used Cars, she would complete a revenue form, Federal odometer statement, license application, title application form, and bill of sale and complete the assignment of title by filling out the reverse side of the surrender title. She forwarded the application for new title, surrender title, revenue form and requisite check, if any, to the Secretary of State. See Ill. Rev. Stat. 1985, ch. 95½, par. 3—113.

It appears from the record that Darold did not enter vehicle mileage figures on the reverse of surrender titles or title application forms respecting any of the vehicles in question. Carol testified that because Tri-Ford and Clinton County Motors had left blank the mileage and

date-of-sale information on the backs of the surrender titles received from them for the nine vehicles, she or Darold would send someone to locate the vehicle on the lot to obtain the serial number and odometer reading. According to her testimony, therefore, she reported the mileage on the odometer statements, title applications and surrender titles as what was on the car's odometer while it was at the Yarbrough lot. While the mileage figures necessary to fill out the title application form and second assignment by dealer on the reverse side of the surrender title were the same, and obtainable from the vehicle odometer itself, it was necessary for her to reconstruct the dates and mileage figures to be inserted in the blanks concerning first reassignment by dealer and original assignment by owner on the reverse of surrender titles, as these had been received in blank. According to Carol, she estimated what those figures would be by subtracting approximately 100 miles from the odometer reading on the car to account for the distance from Tri-Ford or Clinton County Motors to Yarbrough Used Cars. She similarly inserted a reduced mileage figure in any blank on a surrender title concerning the original assignment of the prior owner. All of these figures were entered on the date of the actual resale by Yarbrough Used Cars.

Regardless of who filled out the mileage figures on the odometer statements required when the cars were sold to Darold by Tri-Ford and Clinton County Motors, other evidence introduced at trial, including chains of title and odometer statements of the owners who sold the vehicles at issue to Clinton County Motors and Tri-Ford, established that the mileage listed on the nine surrender titles was less than the mileage on the cars when they were sold to Tri-Ford and Clinton County Motors.

Sergeant Steve Norrenberns of the Illinois Secretary of State police testified about the history of each of the nine vehicles at issue, as established from an Illinois title chain which was prepared concerning each vehicle. A ti-

tle chain contains the make, model, year and serial number of a vehicle. Starting with the original certificate of origin from the manufacturer of the vehicle, the title chain traces the path of the vehicle, through documents such as applications for title, as it is resold from the first owner to subsequent owners.

The State also called many of the former owners of the nine vehicles as witnesses. They testified that the mileage represented on the back of the surrender titles was less than the true mileage of the cars; all of them denied writing in the false mileage figures on the backs of the surrender titles. Testimony of the various original owners and of the subsequent resale buyers of the vehicles in question, often supported by copies of Federal odometer statements and bills of sale or revenue forms, established that the mileage on the vehicles when sold to Tri-Ford and Clinton County Motors was in each case substantially in excess of the mileage appearing at the time of resale later by Yarbrough Used Cars and well beyond the discrepancies explained by Carol Yarbrough in connection with reconstructing prior sales.

A former employee of Darold testified that he rolled back approximately 300 odometers while he worked for defendant. He stated that Darold would either hold up fingers or write on a piece of paper how much he wanted the odometer rolled back. He named two other people who were allegedly rolling back odometers for Darold. He further testified that sometime around April 1985, Carol told him that they were going to have to quit rolling back the "speedometers *** or we'll get caught, things are gettin' [sic] too hot."

A customer who purchased one of the nine vehicles in question also testified that he accused Darold of rolling back the mileage on the odometer on the car he bought from Darold. He stated that Darold admitted rolling back the odometer, and that although he wanted Darold to buy back the car, Darold only offered to give him about half of what the customer paid for it.

At the conclusion of the bench trial, the trial court found defendants guilty of the charges under section 4—105(a)(5). In its findings of fact, the trial court noted that the odometer of each of the nine vehicles had been rolled back under the direction of Darold. The trial court also found that the certificates of title with false mileage figures on them were sent in with the knowledge of both defendants. At a hearing on defendants' post-trial motion, the trial court further held, in denying the motion, that the evidence established that both defendants entered into a course of conduct involving odometer rollbacks. The trial court noted that while this was not the specific offense with which defendants were charged, "it was part and parcel of that which gave rise to the making of material false statements. They were each offenses of deceit and dishonesty."

On appeal, defendants argued that the indictments by which they were charged were defective and that the evidence was insufficient to prove them guilty beyond a reasonable doubt. The appellate court reversed their convictions, finding that the indictments were deficient for failing to allege conduct prohibited by section 4—105(a)(5).

The appellate court found that the indictment was defective because it charged defendants with making material false statements on surrender titles while section 4—105(a)(5) prohibits the making of a material false statement on "any *application* for any *** certificate of title." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 95½, par. 4—105(a)(5).) The court found that when the legislature referred to applications in section 4—105(a)(5), it intended to refer only to the title application form itself. The court held, therefore, that "providing false mileage information on the old titles as they were alleged to have done in the indictment, is not equivalent to making a material false statement on an application for a new title certificate, which is what section 4—105(a)(5) prohibits." 166 Ill. App. 3d 782, 788.

The appellate court further held that the evidence was insufficient to sustain a conviction for committing fraud in connection with applications for new title certificates. The court stated that the crime of committing a fraud in connection with an application for a title certificate under section 4—105(a)(5) "requires an intent to defraud, even though this element is not expressly mentioned in the statute." (166 Ill. App. 3d at 789.) The court believed that because the issue of whether defendants acted with an intent to defraud was never directly addressed, the State had failed to prove intent.

The State argues that the appellate court erred when it held that section 4—105(a)(5) prohibits false statements only on the application for certificate of title and not on the required documents which must accompany the application. The State also contends that the appellate court erred when it held that the evidence was insufficient to sustain a conviction for committing fraud in connection with applications for new title certificates.

Defendants argue that the appellate court correctly held that the indictment was insufficient for charging defendants with making false statements on certificates of title instead of applications for certificates of title. Defendants further contend that they were not proven guilty beyond a reasonable doubt of violating section 4—105(a)(5) and that the appellate court correctly found that there was insufficient evidence to uphold their convictions for committing a fraud in connection with applying for new certificates of title.

We initially note that defendants argue in their brief that the indictment was insufficient for failing to charge an offense. Although the statute may be violated by making a material false statement on any application for, *inter alia,* a certificate of title, it may also be violated by committing a fraud in connection with any application for a certificate of title. The defendants' argument, which the appellate court agreed with, is almost entirely premised on their contention that the indictment failed

to allege that defendants made material false statements on applications for title, and not on the contention that the indictment was insufficient by not properly charging them under the fraud provision of section 4—105(a)(5). As we find that defendants were properly convicted on four counts of automobile title fraud in violation of section 4—105(a)(5) by committing a fraud in connection with applying for certificates of title, we need not address the State's contention that the appellate court erred in finding that the indictment was insufficient for not charging defendants with making material false statements on applications for new certificates of title, as opposed to the surrender titles themselves. We will, however, discuss whether the indictment sufficiently apprised defendants of a charge of violating section 4—105(a)(5) by committing a fraud in connection with applying for new certificates of title.

Defendants failed to raise this issue in the trial court. When challenged for the first time on appeal, "an information or indictment is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." (*People v. Gilmore* (1976), 63 Ill. 2d 23, 29; *People v. Pujoue* (1975), 61 Ill. 2d 335, 339.) We believe that the indictment satisfies this standard.

The indictment charged defendants with committing the offense of "FALSE OR FRAUDULENT APPLICATION FOR CERTIFICATE OF TITLE." Moreover, the body of the indictment stated that defendants "knowingly made a material false statement," by falsely stating the mileage on the surrender titles sent to the Secretary of State.

We believe that the indictment apprised defendants of the precise offense charged, violation of section 4—105(a)(5), with sufficient specificity to prepare their defense; defendants would also be able to plead their con-

viction as a bar to future prosecution arising out of the same conduct. The title of the document specifically alleged fraud, while the body of the indictment charged them with knowingly making a material false statement. The indictment was therefore sufficient and defendants' argument must fail.

The State contends that the appellate court erred when it held that the evidence was insufficient to sustain a conviction under section 4—105(a)(5) for committing fraud in connection with applications for new title certificates. Defendants assert that the evidence was insufficient to support their convictions and that the appellate court correctly so held.

The scope of our review of the sufficiency of the evidence to support a conviction is well established. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of a defendant's guilt. (*People v. Sanchez* (1986), 115 Ill. 2d 238, 260; *People v. Collins* (1985), 106 Ill. 2d 237, 261; *People v. Bradford* (1985), 106 Ill. 2d 492, 502.) When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. (*Sanchez*, 115 Ill. 2d at 260-61; *Collins*, 106 Ill. 2d at 261.) As we noted in *Sanchez*, the "relevant inquiry is 'whether, after [re]viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Sanchez*, 115 Ill. 2d at 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *Collins*, 106 Ill. 2d at 261.

The appellate court held that although section 4—105(a)(5) defines a strict liability offense (166 Ill. App. 3d at 788-89, citing *People v. Delay* (1979), 70 Ill. App. 3d 712), fraudulent intent is a necessary element of fraud which must be proved by the State. We need not address the issue of whether intent or any other criminal mental

state is needed to violate the first part of section 4—105(a)(5) for making a material false statement on various documents, because we agree with the appellate court that the second part of section 4—105(a)(5), prohibiting "a fraud in connection with any application under this Act," requires the State to prove an intent to defraud. This court has repeatedly held that the concept of fraud implies a wrongful intent, an act calculated to deceive. *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, 322; *Exline v. Weldon* (1974), 57 Ill. 2d 105, 110.

Along with a wrongful intent, the elements of fraud include making a false representation of a material fact, knowing or believing it to be false and doing it for the purpose of inducing the other party to act. (*Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 249; *Roth v. Roth* (1970), 45 Ill. 2d 19, 23.) The appellate court found that the State had failed to prove that defendants had a wrongful intent. We believe, however, that the evidence, when viewed in the light most favorable to the State, was ample to support defendants' convictions under four counts of the indictment.

Although the appellate court apparently believed that the State failed to prove intent, the facts bear out a strong case of intent to defraud concerning those surrender titles requiring mileage information. The trial court, sitting as the fact finder, found that the evidence established that both defendants entered into a course of conduct involving odometer rollbacks. The trial court noted that while this was not the specific offense with which defendants were charged, "it was part and parcel of that which gave rise to the making of material false statements. They were each offenses of deceit and dishonesty." The court found, therefore, that the surrender titles were sent in with the knowledge of both defendants that they contained false mileage information.

Defendants argue that the State failed to prove beyond a reasonable doubt that odometers were rolled back on any vehicle at issue while in the possession of

Yarbrough Used Cars, since an equal opportunity to have done so existed on the part of Tri-Ford and Clinton County Motors, regardless of the mileage documentation exchanged between these dealers when the vehicles in question were wholesaled to Yarbrough Used Cars. Defendants contend that the proof of this was even weaker as to the three cars sold on consignment by Gary Dial.

Because the statute speaks only of committing a fraud in connection with any application under the Act (Ill. Rev. Stat. 1985, ch. 95½, par. 4—105(a)(5)), the State need not necessarily prove that defendants rolled back the odometers. Establishment of this fact, however, provides evidence of an intent to defraud. In *Jim M'Lady Olds, Inc. v. Secretary of State* (1987), 162 Ill. App. 3d 959, the court addressed a vagueness challenge to section 5—501(a)(3) of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 5—501(a)(3)). Section 5—501(a)(3) provided that an automobile dealership's license can be suspended if it has been "guilty of a fraudulent act in connection with selling, bartering, exchanging, offering for sale or otherwise dealing in vehicles, bodies and component parts." In response to appellant's argument that this language was unconstitutionally vague, the court stated that "it is specious to argue that an automobile dealership would not know beyond any doubt that rolling back an odometer would constitute a 'fraudulent act.' " *Jim M'Lady Olds,* 162 Ill. App. 3d at 963.

One of Darold's former employees testified that he had rolled back approximately 300 odometers while he worked for Darold. He also stated that Carol had told him that they were going to have to quit rolling back odometers. A customer who purchased one of the vehicles in question also testified that he confronted Darold about the mileage having been rolled back on the car he had purchased from Darold, and that Darold admitted rolling back the odometer. In light of this testimony, as well as the documentary evidence introduced and other

evidence presented, including testimony from former car owners, which established that the mileage listed on the nine surrender titles (undisputedly taken from the odometers of the nine vehicles) was less than the mileage on the vehicles when they were sold to Tri-Ford and Clinton County Motors, we believe that intent to defraud was clearly established.

Defendants argue that both defendants were unaware of what each was allegedly doing; Darold, defendants contend, did not fill out any false information on title applications or titles, or know that Carol was doing so, while Carol, defendants argue, did not know of any mileage rollbacks. Defendants contend, therefore, that both defendants lacked the intent to defraud because both were unaware of what each other was doing.

Without recapitulating the evidence, we find that the trial court's factual findings that both defendants were aware of the false mileage figures written on the surrender titles and sent in to the Secretary of State was not against the manifest weight of the evidence. (See *In re Estate of Wernick* (1989), 127 Ill. 2d 61, 86; *People v. King* (1986), 109 Ill. 2d 514, 525.) As Darold was directing the rollback of odometers on the cars he sold, he must have been aware that the figures his wife was putting on the documents were false. Moreover, Carol testified that when she was filling out the surrender titles, odometer statements and title applications, she or Darold would send someone out to get the serial number and odometer reading. The evidence presented renders inconceivable the argument that neither defendant knew what the other was doing.

Defendants contend that the false mileage information written on the four surrender titles which were issued before section 3—112.1 went into effect was not material, and therefore cannot support a conviction based on fraud. Defendants further contend that one surrender title of the five that were issued after section 3—112.1 went into effect also lacks material false infor-

mation because the box was checked next to the statement that the odometer certification is not the actual mileage. Finally, defendants argue that mileage entries concerning either original assignment or first reassignment by dealer are not material since they are not relied upon by either the Secretary of State or by the purchaser.

As previously noted, section 3—112.1, which became effective on August 25, 1980, provides that all titles issued by the Secretary of State after the effective date of the statute shall provide for an odometer certification. (Ill. Rev. Stat. 1985, ch. 95½, par. 3—112.1(a).) Section 3—112.1 provides that the certification on a title must contain two statements which may be checked to indicate that the amount of mileage stated is in excess of 99,999 miles or that the odometer reading is not the actual mileage.

One of the five surrender titles sent to the Secretary of State by defendants, which required an odometer certification to be filled out, indicated that the odometer reading written on the surrender title is not the actual mileage. On the other four surrender titles requiring an odometer certification, neither statement was checked.

We believe that defendants' convictions for fraud under section 4—105(a)(5) for (a) the four counts based on the false mileage figures on the four surrender titles not requiring an odometer certification under section 3—112.1 and (b) the one count based on the surrender title requiring an odometer certification which states that the mileage figure written on the back of the title does not represent the actual mileage, cannot stand, as these false statements were not material.

We do not believe that the false mileage statements on the four surrender titles issued before section 3—112.1 took effect can be considered material when that information, even though false, was not required by law. Until section 3—112.1 came into effect, the State routinely issued new certificates of title without requiring

any odometer certification on surrender titles at all. As no mileage figures were required to be listed on these four surrender titles in order for new certificates of title to issue, we fail to see how volunteered false mileage on the titles could be said to be material. Likewise, because section 3—112.1 provided transferors with the option of admitting that the mileage listed on a surrender title is not accurate, we do not believe that a false mileage figure on a surrender title can be considered to fall under the definition of fraud when it is truthfully stated that the mileage figure does not indicate the actual mileage. For these reasons, defendants' convictions under those five counts must be set aside.

As we have already concluded that the evidence, when viewed in the light most favorable to the State, established that defendants falsely represented the mileage figures with an intent to defraud, we need only decide whether the false mileage entered on the four remaining surrender titles was a material fact, falsified with the intention of inducing the State to act. We believe that defendants' convictions under the remaining four counts must be upheld, as defendants knowingly misrepresented a material fact for the purpose of inducing the State to act.

Unlike the four surrender titles issued before section 3—112.1 took effect, these four surrender titles contained the odometer certification statements and blanks required by section 3—112.1; defendants, therefore, were required by section 3—112.1 to fill out the odometer certification information on the backs of the surrender titles. Moreover, a properly assigned certificate of title, filled out in accordance with the requirements of section 3—112.1, is a prerequisite to issuance of a new certificate of title by the Secretary of State. (Ill. Rev. Stat. 1985, ch. 95½, par. 3—116(a).) Carol's testimony indicated that she was aware of this fact; she stated that she had accidentally left mileage figures off surrender titles and that the Secretary of State had sent them back

to her. There is no question that the mileage information required to be filled out on surrender titles by section 3—112.1 is material. The fact that such information is required by the laws of this State, and that the Secretary of State must have it before a new certificate of title is issued, is evidence enough of its materiality. The evidence also established that defendants filled in the false mileage figures in order to induce the State to act. As we noted, Carol testified that if mileage information was not filled in, the Secretary of State would send the documents back to her instead of issuing a new certificate of title.

Defendants finally contend that the evidence was insufficient to support their convictions under the three counts concerning the cars sold by Gary Dial on consignment. They argue that because there is evidence that cars sold on consignment by Dial were sometimes driven directly to Dial's lot by Tri-Ford or Clinton County Motors, they would not have had an opportunity to roll back the odometers on those cars or know that the mileage shown on the odometers of those cars was false.

Only one of the four remaining counts concerns a vehicle sold by Dial on consignment. Count VII of the indictment concerns a 1977 Pontiac that was sold to Darold by Tri-Ford and sold by Dial on consignment. The record does not reveal whether that car was delivered to Darold's Used Cars or directly to Dial's lot, and Dial testified that on occasion vehicles purchased by Darold would be taken directly to Dial's lot. Dial also testified, however, that while he filled out purchaser's applications for new certificates of title as well as odometer statements for the three cars he sold on consignment for Darold, he never filled out the reverse of the surrender titles. Dial denied rolling back the odometers on any cars he sold on consignment, and further stated that he was unaware of any such activity by Darold or any of Darold's employees. He testified that he obtained any necessary mileage information for filling out docu-

ments from looking at the mileage actually showing on the odometers of the cars on his lot. Dial testified that he never saw or had access to the certificate of title of the 1977 Pontiac. Evidence introduced at trial, including odometer statements signed by Lisa Giger, who sold the car to Tri-Ford, and the testimony of Darwin Redding, established that when the 1977 Pontiac was sold to Tri-Ford by Lisa Giger, the car had 124,250 miles on it. The surrender title indicates that the car had 70,100 miles on it when sold to Tri-Ford and 70,467 when sold by Gary Dial.

In viewing this evidence in the light most favorable to the State, we conclude that the essential elements of committing a fraud under section 4—105(a)(5) were established by the State concerning count VII, as well as the other three remaining counts concerning surrender titles on which defendants were required to complete odometer certifications.

For all the above reasons, we affirm the appellate court's reversal of the circuit court's judgment of conviction concerning counts II, V, VI, VIII and IX of the indictment, and reverse the appellate court's reversal of the circuit court's judgment of conviction on counts I, III, IV and VII of the indictment.

Defendants contend, and the State agreed at oral argument, that if this court affirms the reversal of fewer than all convictions of either defendant, we should remand the cause to the appellate court for consideration of all remaining issues presented to the appellate court on direct appeal but not yet decided by that court. Upon review of defendants' briefs in the appellate court, we find that only one issue that was raised in that court has not been addressed and decided by this opinion. Besides arguing that the indictment was insufficient and defendants were not proven guilty beyond a reasonable doubt of violating section 4—105(a)(5), defendants' only other contention before the appellate court was that the trial

court abused its discretion in sentencing Darold to a term of imprisonment.

Because of the disposition of this cause, defendants' sentences are vacated and this cause is appropriately remanded to the circuit court of Fayette County for further proceedings consistent with this opinion.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; sentences vacated; cause remanded.*

JUSTICE CALVO took no part in the consideration or decision of this case.